HOCHSPRUNG, Respondent, v. STEVENSON, Defendant;
SUNBURST OIL & GAS REFINING CO., Appellant.

(No. 6,272.)

(Submitted March 6, 1928. Decided April 6, 1928.)

[266 Pac. 406.]

*Oil Lands—Quieting Title—Basis of Action is Adverse Claim—*
*Jurisdiction—Deeds—Operative Words of Grant Necessary—*
*Tenants in Common—Right of Tenant in Common to Ingress*
*and Egress Implied in Judgment.*

Quieting Title—Action Lies if Claim of Defendant Adverse to Plaintiff's Interest.
  1. Under section 9487, Revised Codes 1921, as amended (Chap. 119, Laws 1923), the district court has jurisdiction to make a complete adjudication of the title to lands involved in an action to quiet title, irrespective of whether the claim asserted by defendant under an instrument in writing constitutes a cloud on plaintiff's title; if the claim is adverse to plaintiff's interest the action may be maintained.

Same—Action Requiring Construction of Instrument Maintainable.
  2. Under the above rule, *held*, that the court had jurisdiction to render judgment in an action to quiet title to oil lands an interest in which was claimed by defendant under an assignment of royalty though the real purpose of the action was to obtain a judicial construction of the instrument on which defendant's claim was based.

Same—Deeds must Contain Operative Words of Grant.
  3. An instrument conveying an interest in land must contain operative words of grant; without such words the conveyance does not pass title and courts may not put them in by construction.

Same—Deeds—Rule of Construction.
  4. The intention of the grantor in a deed is to be gathered from a consideration of the entire instrument; every part of it must be given effect if reasonably practicable and consistent with its evident purpose and operation according to its effect when viewed as a whole.

Same — Assignment of Interest in Oil Lands — Absence of Operative Words of Grant—Failure of Conveyance.
  5. Where, after assigning a four and one-half per cent interest of the minerals in oil land to defendant, the instrument further provided that in the event an existing lease should become canceled or forfeited, then the lease interests and all future rentals on the land for oil and gas privileges "shall be owned jointly" by the owners and the assignee, each owning a proportionate interest,

---

1.  See 22 *Cal. Jur.* 129.
4.  See 9 *Cal. Jur.* 255; 8 R. C. L. 1047.

[82 Mont. 222.]

the latter clause held not to have conveyed any interest in the absence of words of grant, the words "shall be owned jointly" not being such and not denoting a present passing of title.

Real Property—Tenants in Common—Grant of Interest in Land Carries With It Right of Ingress and Egress.

6. By a land owner's conveyance of an interest in the oil and gas therein, the grantee and the owner become tenants in common with the right in each to explore the land and for such purpose the grantee has a right of ingress and egress, and the latter may by lease or license confer upon another person the right to occupy and use the land as he himself might do.

Same—Tenants in Common—Right of Ingress and Egress Implied in Judgment Recognizing Right of Defendant as Tenant in Common.

7. Where the decree in an action to quiet title in effect declared defendant (appellant) a tenant in common with plaintiff under an assignment of a certain per cent of the minerals in the land, but failed to adjudge in him a right of ingress and egress for the purpose of exploration, his right in that respect will be implied in the decree, since necessary implication is as much a part of an instrument as if that which is so implied were plainly expressed.

[1, 2]   Quieting Title, 32 **Cyc.**, p. 1342, n. 49, p. 1374, n. 30.

[3, 4]   Deeds, 18 **C. J.**, sec. 60, p. 178, n. 72; sec. 203, p. 256, n. 73; sec. 205, p. 257, n. 79.

[5]   Mines and Minerals, 40 **C. J.**, sec. 706, p. 1086, n. 89; sec. 738, p. 1109, n. 39.

[6]   Tenancy in Common, 38 **Cyc.**, p. 8, n. 28, p. 16, n. 69, p. 105, n. 83.

[7]   Judgments, 34 **C. J.**, sec. 794, p. 502, n. 9.

*Appeal from District Court, Toole County; Charles S. Hartman, Judge.*

Action by Edith Hochsprung against L. C. Stevenson and another. Judgment for plaintiff and defendant Sunburst Oil & Gas Refining Company appeals. Affirmed.

*Mr. Homer G. Murphy* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted an original and a reply brief; *Mr. Cleveland Hall* argued the cause orally.

Where the instrument or proceeding constituting the alleged cloud is absolutely void on its face, so that no extrinsic evi-

6. Cotenancy in mines, see note in 91 **Am. St. Rep.** 854. See, also, 7 **R. C. L.** 818. Right of one tenant in common to lease oil and gas land, see note in 40 **A. L. R.** 1401.

7. See 7 **Cal. Jur.** 347, 358; 6 **R. C. L.** 856.

dence is necessary to show its invalidity, and where the instrument or proceeding is not thus void on its face, but the party claiming under it, in order to enforce it, must necessarily offer evidence which will inevitably show its invalidity and destroy its efficacy—in each of these cases the court will not exercise its jurisdiction either to restrain or remove a cloud. (4 Pomeroy's Equity Jurisprudence, sec. 1399; 32 Cyc. 1316, 1317; *Newman* v. *Credit Men,* 63 Mont. 545, 208 Pac. 914; *Poulos* v. *Lyman Bros. Co.,* 63 Mont. 561, 208 Pac. 598.) Since respondent herself contends that the instrument is defective upon its face, the rule above applies with full force herein. The natural outgrowth of such a rule is that in an action to quiet title a court will not consider merely matters of construction.

Where the question is purely one of construction, no case is presented for the removal of a cloud on the title. (*Ecton* v. *Smith,* 6 Ky. Law Rep. 224; *Brown* v. *Austen,* 35 Barb. (N. Y.) 341, 22 How. Pr. 394.) Where everything appears of record making validity of plaintiff's title a question of law, there is no cloud on the title. (*Born* v. *Pittsburgh,* 266 Pa. 128, 109 Atl. 614; *Preston* v. *Smith,* 26 Fed. 884; *McCarty* v. *McCarty,* 275 Ill. 573, 114 N. E. 322.)

If an instrument requires merely the construction of a court, then as a matter of law no cloud exists. A cloud exists only when the instrument is valid upon its face, and extrinsic evidence is necessary to show it defective. Where the instrument is valid and subsisting it cannot be a cloud.

In the case of *Dunbar* v. *Morajeska,* 20 Ariz. 178, 178 Pac. 777, the court said: "So the only conclusion is that the court found from the pleadings or the evidence, or both, that the deed asked to be canceled was a mortgage and not a deed, although purporting to be one. And the finding also must have been that it was a valid, subsisting consideration and properly of record. That being so, it was not, as the term is defined and understood, a cloud upon the title." (See, also, *Griffiths* v. *Griffiths,* 198 Ill. 632, 64 N. E. 1069; *Rigdon* v. *Shirk,* 127 Ill.

411, 19 N. E. 698.)   Under such circumstances, the only judg-
ment and decree that could be entered in the cause was the
decree proposed by appellant dismissing the complaint.

A cancellation may be either voluntary or involuntary.   Thus
a surrender by a tenant before the time set for the termination
of his lease is a cancellation.   (*Toland* v. *Toland,* 123 Cal. 140,
55 Pac. 681.)   Such is the case here.   A cancellation is a waiver
of all rights under a contract.   (*Lipschutz* v. *Weatherly &
Twiddy,* 140 N. C. 365, 53 S. E. 132; *Whedon* v. *Lancaster
County,* 80 Neb. 682, 114 N. W. 1102.)   A voluntary release
under a surrender clause is a cancellation.   (*Rogers* v. *Mag-
nolia Oil & Gas Co.,* 156 Ark. 103, 245 S. W. 802; *Butler* v.
*City of Iola,* 100 Kan. 111, 163 Pac. 652; *Ulrey* v. *Keith,* 237
Ill. 284, 86 N. E. 696; *Scott* v. *Lafayette Gas Co.,* 42 Ind.
App. 614, 86 N. E. 495; *Rechard* v. *Cowley,* 202 Ala. 337, 80
South. 419.)   Again, the term "forfeit" includes within its
meanings "surrender."   (*Newlove* v. *Trust Co.,* 156 Cal. 657,
105 Pac. 971, 973.)   The termination of an oil and gas lease
by the expiration of its terms is a forfeiture of the lease.)
(*Steven* v. *Potlach Oil & Refining Co.,* 80 Mont. 239, 260 Pac.
119.)

Under the above authorities, and bearing in mind the pro-
visions of the lease with reference to which the parties were
contracting, it seems apparent that the release given by the
Carter Oil Company comes within the term "cancel or forfeit"
as used in the assignment, and that upon the happening of that
event appellant became vested with a proportionate interest in
the minerals.

In the lower court respondent contended that since the as-
signment attacked contained no words of conveyance, it was
not sufficient to transfer to appellant any interest in the min-
erals additional to the four and one-half per cent.   It may
be accepted as true that a deed without words of conveyance
passes no title.   But the assignment here under consideration

82 Mont.—15

contains the following words "grant, bargain, sell, convey, set over, and assign and deliver to L. C. Stevenson."

After the description of the property to be conveyed and after the clause here in controversy appears the habendum clause as follows: "To have and to hold, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging, and also the right, title, interest, claim, demand, possession, right of dower, and right of homestead, as well in law as in equity of the said Edith Hochsprung and Theodore Hochsprung, of, in and to said interests hereby conveyed and all thereof, unto the said L. C. Stevenson, successors, heirs or assigns forever." The clause in controversy which comes after the granting clause and precedes the habendum clause is as follows: "The lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by Edith Hochsprung and Theodore R. Hochsprung and L. C. Stevenson each owning proportionate interest respectively in all oil, gas and other minerals in and upon said land, together with proportionate interest in all future rents."

The only authorities cited by respondent in the lower court were: *McGarrigle* v. *Orphan Asylum* (Cal.), 79 Pac. 447; *Brewton* v. *Watson*, 67 Ala. 121. Neither authority is applicable here. As sustaining the contention of appellant, we cite a later California case, one showing an almost identical state of facts as here presented: *Hughes* v. *Scott*, 190 Pac. 643. That case likewise disposes of the Alabama case cited.

It is held that a clause succeeding the granting clause and preceding the habendum should in a case such as this be given effect as a part of the granting clause. (*Adams* v. *Fisher*, 143 Mich. 673, 107 N. W. 705; *Wilson* v. *Wilson*, 268 Ill. 270, 109 N. E. 36.)

In determining the estate created by a deed, the court will, under the modern rules of construction now generally adopted, consider the deed as a whole, without regard to its formal

division into parts, the position of its different clauses or the technical accuracy of the language employed, the purpose sought being to effectuate the intention of the grantor as gathered from the entire instrument. (18 C. J. 330, 331; *Lilly v. Raleigh Hdw. Co.,* 90 W. Va. 607, 111 S. E. 592; *Kaleialii v. Sullivan,* 242 Fed. 446, 155 C. C. A. 222.)

In the case of *Brewton* v. *Watson,* 67 Ala. 121, cited by respondent in the lower court, the court said: "Where an intent that the estate shall pass is manifested, its words will, if possible, be so construed that it shall take effect."

The modern doctrine of construction of deeds is that the intention of the grantor is to be gathered from a consideration of the entire instrument, though the immediate object of inquiry is the meaning of an isolated clause, taking into consideration every provision, clause and word, whether words of grant or description, or words of qualification, restraint, exception or explanation. (9 Cal. Jur. 255; *East San Mateo Land Co.* v. *Southern Pacific R. Co.,* 30 Cal. App. 223, 157 Pac. 634.) The phrase here attacked is explained and made certain by the language succeeding it.

Other cases cited in connection with above argument: *Walker* v. *Ames* (Tex. Civ. App.), 229 S. W. 365; *Queen* v. *Turman* (Tex.), 257 S. W. 1092; *Hoffman* v. *Magnolia Petroleum Co.* (Tex. Civ. App.), 273 S. W. 828; *McKernon* v. *Josey Oil Co.,* 106 Okl. 100, 233 Pac. 451; *Prairie Oil & Gas Co.* v. *Allen,* 2 Fed. (2d) 566.

*Mr. Louis P. Donovan,* for the Respondent, submitted a brief and argued the cause orally.

Suit to quiet title was plaintiff's appropriate remedy. The complaint is in the usual form of a suit to quiet title under section 9479, Revised Codes 1921. (*Slette* v. *Review Publishing Co.,* 71 Mont. 518, 230 Pac. 580; *Merk* v. *Bowery Mining Co.,* 31 Mont. 298, 78 Pac. 519; *Pollock M. & N. Co.* v. *Davenport,*

31 Mont. 452, 78 Pac. 768; *Violett* v. *Martin,* 62 Mont. 335, 205 Pac. 221.) There is no provision in the statute that the claim of the defendant must constitute a cloud upon the title. The action is directed against the "claim" of the defendant and it is wholly immaterial whether that claim is based upon a written instrument or not. The question has already been determined in this jurisdiction. (*Mannix* v. *Powell Co.,* 60 Mont. 510, 199 Pac. 914; *Slette* v. *Review Publishing Co.,* supra; *Castro* v. *Barry,* 79 Cal. 443, 21 Pac. 946; 22 Cal. Jur., pp. 116, 117; *Cullen* v. *Western M. & W. T. Co,* 47 Mont. 513, 134 Pac. 302.)

Respondent submits that the Carter Oil Company lease did not become "canceled or forfeited" within the meaning of these terms as used in the instrument under consideration; since the lease terminated by expiration of its term, it cannot be said to have been either "canceled or forfeited." The word "forfeit" is defined as follows: "To lose an estate, a franchise or other property belonging to one by the act of the law and as a consequence of some misfeasance, negligence or omission." (Black's Law Dictionary, 2d ed., p. 512.) "Forfeit means to annihilate or lose by a misdeed or transgression." (26 C. J. 892.) "The word forfeit has a well established meaning in the law. To forfeit is to divest or to suffer divestiture of property without compensation in consequence of a default or offense." (2 Anderson's Law Dictionary, and Second Series Words and Phrases, p. 611; *Brown* v. *Fowler,* 65 Ohio, 507, 63 N. E. 76). Nor was it canceled. To "cancel" means to annul, and it clearly implies that the instrument canceled should in the absence of cancellation appear upon its face to continue in force and effect. Where the lessee is permitted to occupy the premises for the entire term of his lease, it cannot be said that the lease was canceled. (*Toland* v. *Toland,* 123 Cal. 140, 55 Pac. 681.)

Respondent respectfully submits that the clause, "shall be owned jointly by," was ineffectual to pass to the appellant or

its predecessor any additional interest in the minerals in the land upon the termination of the Carter Oil Company lease.

To convey a title means to transfer or move the title from one person to another. Unless the writing contains words indicating that the title shall move from one person to another, it cannot be deemed a conveyance. A mere declaration of the status of the title is clearly distinguishable from a movement or transfer of the title. The latter involves a change, transfer, or movement of the title; the former does not. The words "shall be owned jointly by," used in the clause under consideration is a mere declaration of the status of the title as distinguished from a transfer of the title. They indicate the understanding of the parties as to where the title will stand, and do not indicate that the title shall pass. (4 Thompson on Real Property, pp. 143, 144; *McGarrigle* v. *Roman Catholic Orphan Asylum*, 145 Cal. 694, 104 Am. St. Rep. 84, 1 L. R. A. (n. s.) 313, 79 Pac. 447; *Webb* v. *Mullins,* 78 Ala. 111; *Long* v. *Holden,* 216 Ala. 81, 112 South. 444; *Smith* v. *Williams,* 141 S. C. 265, 139 S. E. 625.) The opinion in the *McGarrigle Case* is not, in any manner, qualified by the decision of the court of appeals in *Hughes* v. *Scott,* 47 Cal. App. 264, 190 Pac. 643. In the latter case the court of appeals merely held that the word "revert" there under consideration was an operative word, indicating the intention that the title should pass. It had previously held that the words, "shall pass to," were operative words.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action to quiet title. The complaint is in the ordinary short form used in such cases and alleges that plaintiff is, and for a long time had been, the owner of the north half of section 4, township 34 north, range 1 west, in Toole county, "together with an undivided ninety-three one-hundredths interest in and to all of the oil, gas and other minerals in or under" the same; that the defendants claim an estate or in-

terest therein adverse to plaintiff, which claim is without any right whatever, and prays that the defendants be required to set forth the nature of their claim; that it be adjudged that defendants have no estate or interest whatever in or to said land or premises, but that plaintiff's title thereto is good and valid, and for general relief.

The answer admits that defendants claim an interest in the lands and minerals described in the complaint adverse to plaintiff, and then sets forth the nature of said claim, as follows: That on December 21, 1922, while the plaintiff was the owner and in possession of the land in question, for a valuable consideration, she, with her husband, Theodore R. Hochsprung, conveyed to the defendant Stevenson a four and one-half per cent interest in and to all the oil, gas and other minerals in and under, or that might be produced from, said land, with the right of ingress and egress for the purpose of mining, exploring and drilling for oil, gas, and other minerals, and removing the same therefrom, by an instrument in writing designated as an "assignment of royalty," which, in addition to the above grant, contained the following:

"And said above-described lands being now under an oil and gas lease originally executed in favor of and held by Carter Oil Company, it is understood and agreed that this sale is made subject to said lease, but covers and includes nine twenty-fifths of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease. It is agreed and understood that nine twenty-fifths of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to said L. C. Stevenson, *and in the event that the said above-described lease for any reason becomes canceled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas, and mineral privileges shall be owned jointly by Edith Hochsprung and Theodore R. Hochsprung and L. C.*

*Stevenson each owning proportionate interest, respectively, in*
*all oil, gas, and other minerals in and upon said land, together*
*with proportionate interest in all future rents."*

It is then alleged that on or about the fifth day of April,
1927, the lease held by the Carter Oil Company was sur-
rendered, canceled and forfeited; that by mesne conveyances
the defendant Sunburst Oil & Gas Refining Company had be-
come, and still is, the owner and entitled to the possession of
the estate and interest acquired by said Stevenson in said
land "and in and to all oil, gas and other minerals in and
under the same to the extent of nine twenty-fifths thereof,"
and the prayer is that its title thereto may be quieted.

In her reply the plaintiff admitted the execution of the in-
strument relied upon by appellant, and by way of affirmative
defense alleged that such instrument was prepared by the de-
fendant Stevenson; that he was trained in drawing such instru-
ments, and that she was not; that defendant Stevenson advised
her that only a four and one-half per cent royalty interest was
conveyed; that such advice was made deliberately and inten-
tionally and was relied upon by plaintiff, and she thereupon
executed the instrument under the impression that it conveyed
only a four and one-half per cent royalty interest.

The defendants moved to strike these allegations of affirmative
defense from the reply, for the reason that they constituted a
departure from the complaint, which motion was overruled.
The case was brought on for trial before the court without a
jury. At the opening of the case counsel for the plaintiff,
apparently having reference to the argument of counsel for
defendants on motion to strike, said to the court: "As counsel
stated in his argument, this is a suit to quiet title. *   *   *
Defendant sets forth this particular instrument as the basis of
its claim of title. *   *   * The real controversy here between
the plaintiff and the defendant is the construction of that in-
strument."

After the evidence had been received, the court made findings of fact and conclusions of law in favor of the plaintiff, upon which a judgment was entered, from which the Sunburst Oil & Gas Refining Company, hereafter called the defendant, has appealed.

The first contention made by counsel for defendant is that [1, 2] in an action to quiet title, brought under the provisions of section 9479, Revised Codes of 1921, the court cannot be called upon to merely construe an instrument, and hence did not have authority to enter a judgment in this case other than one dismissing the same.

Section 9479, supra, reads: "An action may be brought and prosecuted to final decree, judgment, or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons, both known and unknown, who claim or may claim any right, title, estate or interest therein, or lien or incumbrance thereon, adverse to plaintiff's ownership, or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued, for the purpose of determining such claim or possible claim and quieting the title to said real estate. * * * "

In section 9487, Id., as amended by Session Laws of 1923, page 119, it is provided that, upon the service of summons in the action provided for in section 9479, the court in which "such action is tried shall have jurisdiction to make a complete adjudication of the title to the lands named in the complaint, and the title to which is sought to be quieted, including jurisdiction to direct the cancellation of instruments constituting clouds upon such title. * * * "

Section 6870, Revised Codes of 1907, as amended by Chapter 113, Laws of 1915, was the same as section 9479, supra, and in speaking of that section, in *Mannix* v. *Powell County*, 60 Mont. 510, 199 Pac. 914, this court said: "Like statutes have been construed by the courts frequently, and it is the prevailing

opinion that under such a statute as ours the owner of any estate or interest in land of which the law takes cognizance is entitled to have any claim adverse to his interest, such as it is, determined, and the title quieted.''

In *Slette* v. *Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580, this court quoted with approval from *Castro* v. *Barry*, 79 Cal. 443, 21 Pac. 946: ''The action may be maintained by the owner of property to determine any adverse claim whatever.''

In its answer the defendant admits that it asserts a claim to an estate or interest in the premises or minerals described in the complaint adverse to plaintiff, and sets forth the ''assignment of royalty'' as the basis of such claim. The plaintiff does not seek to invalidate any title actually vested in the defendant by the instrument in question; she does not seek the cancellation of that instrument in whole or in part; she merely says that it vested the defendant with four and one-half per cent of the minerals in the ground and left her vested with title to the remaining ninety-five and one-half per cent thereof, to a portion of which the defendant asserted its adverse claim. Whether the instrument constituted a cloud upon plaintiff's title to the minerals is wholly immaterial, ''it being sufficient to warrant a decree quieting title that a claim is made adversely to the title of the true owner.'' (*Slette* v. *Review Pub. Co.*, supra.)

Under the provisions of section 9487, above, the court had authority to make a complete adjudication of the respective rights of the plaintiff and defendant to the lands and mineral rights involved.

The main question in the case is presented by a determination of the meaning of the italicized portion of the ''assignment of royalty,'' above quoted.

In the first place, the plaintiff claims that Stevenson did not obtain any interest in the oil, gas and other minerals under the land beyond the four and one-half per cent mentioned in the

first part of the assignment of royalty, for the reason that the lease to the Carter Oil Company never became canceled or forfeited. In view of the conclusion at which we have arrived, it is not necessary to consider this contention.

We come now to a consideration of the meaning of the italicized portion of the assignment of royalty, above quoted. Plaintiff contends that upon the cancellation and forfeiture of the lease of the Carter Oil Company the defendant Sunburst Oil & ·Gas Refining Company, as the successor in interest of Stevenson, owned four and one-half per cent of the oil, gas and other minerals in and upon the land and the future rents thereof, whereas, the defendant claims that upon the happening of that event it became the owner of nine twenty-fifths of such oil, gas and other minerals. The plaintiff's contention is based upon the ground that the paragraph contains no operative words of conveyance sufficient to transfer to the defendant an interest in such minerals and rights in addition to the four and one-half per cent mentioned in the granting clause of the instrument. We agree with this contention.

It is as a general rule necessary that a deed contain operative [3, 4] words of grant (18 C. J. 128); that a deed without words of conveyance passes no title (4 Thompson on Real Property, p. 143); and that, if an instrument has no words of conveyance, the courts have no right to put them in by interpretation (4 Thompson on Real Property, p. 144). The intention of the grantor in a deed is to be gathered from a consideration of the entire instrument, taking into consideration all of its provisions, and every part must be given effect if reasonably practicable and consistent with its evident purpose and operation, "not, indeed, as it is presented in particular sentences or paragraphs, but according to its effect when viewed as an entirety." (*R. M. Cobban Realty Co.* v. *Donlan,* 51 Mont. 58, 149 Pac. 484; sec. 7530, Rev. Codes 1921.)

Taking this assignment of royalty "by its four corners," it [5] is to be observed that it is perfectly clear that the grantee Stevenson (1) purchased from the grantor four and one-half per cent of the minerals in the land, and (2) that the sale covered and included nine twenty-fifths of the oil and gas rental or royalty due and to be paid under the terms of the lease held by the Carter Oil Company, and also nine twenty-fifths of the money rentals which might be paid to extend the term within which a well might be begun under the terms of that lease. So much of the grant is plain. The instrument then goes on to provide that, if the Carter Oil Company lease becomes canceled or forfeited, the lease interests or all future rents and mineral privileges shall be owned by Edith Hochsprung, Theodore R. Hochsprung, and L. C. Stevenson, each owning "proportionate interest" in the oil, gas and other minerals in and upon the land and all future rents. The oil and gas lease held by the Carter Oil Company did not operate to convey to it the title to the oil and gas in place. (*Homestake Exploration Co.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388.) After the execution of this lease there was nothing to prevent the plaintiff from conveying to Stevenson any interest she desired to in the minerals in or under the premises. Whatever interest she should convey would be subject to the terms of the Carter Oil Company lease. The plaintiff elected to sell to Stevenson, and he elected to buy from her four and one-half per cent of these minerals and mineral rights, and also a nine twenty-fifths interest in the royalties and rentals due and to become due and owing under the terms of the lease. These are the only items which the instrument indicates as being within the terms of the grant. When the Carter Oil Company, by cancellation or forfeiture of its lease, was divested of its interest in its mineral rights to the land in question, such rights reverted to the plaintiff or her grantee. Such rights then became vested in her or her assigns in proportion to their ownership thereof. This

would follow as a matter of law. If the defendant became the owner of the same, or any part thereof, it must have been by virtue of a conveyance; i. e., the transfer of the title or an interest therein from the original owner to it or its predecessor in interest.

The clause in question does not contain any operative words of conveyance. The words "shall be owned jointly by" do not denote a present passing of title. In *McGarrigle* v. *Roman Catholic Orphan Asylum*, 145 Cal. 694, 104 Am. St. Rep. 84, 1 L. R. A. (n. s.) 315, 79 Pac. 447, the court held that the expression "shall become and be the property of" was insufficient to pass any title to real estate for lack of operative words. There is no substantial difference in the meaning of the expression we are considering and the one construed in the *McGarrigle Case*. The defendant calls attention to the later case of *Hughes* v. *Scott*, 47 Cal. App. 264, 190 Pac. 643, and contends that it amounts to a modification of the holding in the *McGarrigle Case*. In the *Hughes Case*, "revert" was considered to be an operative word of conveyance as indicating an intention that the title should pass, and in the opinion the court referred to the case of *Jacobs* v. *All Persons*, 12 Cal. App. 163, 106 Pac. 896, where a like meaning was given to the words "shall pass to." These words "revert" and "shall pass to," express an intention that the title shall pass and are clearly distinguishable from the expression "shall be owned jointly by."

While no adjudicated case directly in point has been found the following lend support to the views above expressed: *Webb* v. *Mullins*, 78 Ala. 111; *Long* v. *Holden*, 216 Ala. 81, 112 South. 444; *Smith* v. *Williams*, 141 S. C. 265, 139 S. E. 625.

We now consider the further statement in the instrument [6] to the effect that, upon the cancellation or forfeiture of the Carter Oil Company lease, the plaintiff, her husband, and Stevenson should each own "proportionate" interests, respectively, in the mineral rights in and upon the land. "Propor-

tionate" means "adjusted to something else according to a
certain rate of comparative relation." (Century Dictionary.)
By the first clause of the assignment the royalty of four and
one-half per cent of the mineral rights in the land passed to
and became the property of Stevenson and his assigns, leaving
ninety-five and one-half per cent of such rights in the plaintiff
or her assigns, and these numerals then represented the rate of
comparative relation or proportionate interest of the parties
to such rights. The succeeding clauses of the instrument relate
to royalties and rentals payable to plaintiff under the lease held
by the Carter Oil Company. But this lease did not convey
any title to the minerals in place under the land (*Homestake
Exploration Co.* v. *Schoregge,* supra), and the right to royalty
or rent under the lease ended with its termination, leaving as
the only basis for computing the proportionate interests of the
parties their respective percentages of ownership in the mineral
rights in the land freed from the Carter Oil Company lease.
This we conceive to be the true interpretation of the language
which the parties used.

The instrument in question, in addition to the mineral
[7] interests conveyed, granted "the right of ingress and
egress at all times for the purpose of mining, drilling, and ex-
ploring said lands for oil, gas, and other minerals and remov-
ing the same therefrom." In the decree entered by the court
this right was not specifically mentioned, and the failure of the
court so to do is made the basis of defendant's assignments of
error 5 and 8.

By the conveyance of the four and one-half per cent interest
of the oil, gas and other minerals in and under the land to
the defendant's predecessor in interest, which was subsequently
transferred to the defendant, the plaintiff and the defendant
became tenants in common. (Secs. 6682, 6683, Rev. Codes
1921; *Rodda* v. *Bent,* 68 Mont. 205, 217 Pac. 669; *Isom* v.
*Larson,* 78 Mont. 395, 255 Pac. 1049.) "And since from the
very nature of mining property it is valuable only because of

the mineral it is supposed to contain, each of the cotenants may work it without being guilty of waste." (7 Cal. Jur. 347.) And for such purpose the tenant in common has a right of ingress and egress. (Id., 347; 1 Thornton on Oil & Gas, sec. 312; *Prairie Oil & Gas Co.* v. *Allen* (C. C. A.), 2 Fed. (2d) 566.)

The instrument did not assume to give to the grantee named therein the exclusive right of ingress and egress for the purpose of mining, drilling, and exploring the lands for oil, gas and other minerals; it merely expressly declared what the law would imply under the authorities above cited, viz., the right of the holder of the undivided interest to enter upon the common property and exercise the rights conferred by section 9091, Revised Codes of 1921.

"Not only may a tenant in common enjoy the common estate, but, by either lease or license he may confer upon another person the right to occupy and use it as fully as such lessor or licensor might if such lease or license had not been granted." (7 Cal. Jur. 358; *Prairie Oil & Gas Co.* v. *Allen,* supra.)

Since the decree of the court below recognized and in effect declared that defendant is a tenant in common owning four and one-half per cent of the minerals in the land, its right of ingress and egress for the purpose of mining is necessarily implied in the decree. "Necessary implication is beyond doubt as much a part of an instrument as if that which is so implied were plainly expressed." (6 R. C. L. 856.)

From our consideration of the record we are of opinion that the learned judge before whom the case was tried placed a correct construction upon the instrument in question, and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.

Rehearing denied April 26, 1928.