## JONES et ux. v. BEDFORD et al.

### No. 961.

Court of Civil Appeals of Texas. Eastland.

Sept. 23, 1932.

On Rehearing Dec. 23, 1932.

Further Rehearing Denied Jan. 20, 1933.

Owen & Owen, of Eastland, for appellants.

Conner & McRae, of Eastland, for appellees.

HICKMAN, C. J.

Appellees W. C. Bedford and daughter, Bettie B. Vestal, sued appellants N. H. Jones and wife, S. A. Jones, and Consolidated Gasoline Company, alleging a conveyance by appellants to them of $\frac{1}{64}$ of the mineral production from certain described tracts of land in Eastland county, and seeking the adjudication of their rights in and title to the mineral interest claimed. In the alternative, they alleged that, if they were mistaken in their construction of the instrument, then a mutual mistake had been made in the drafting thereof and it should be reformed so as to conform to the real agreement of the parties. Their suit against Consolidated Gasoline Company was for conversion of the difference between the amount of oil for which it should have paid them and the amount for which it actually paid them. Royalty payments had been made to appellees on the basis of $\frac{1}{64}$ of the $\frac{1}{8}$ royalty, whereas they were claiming that the payments should have been made on the basis of $\frac{1}{8}$ of the $\frac{1}{8}$ royalty. The Consolidated Gasoline Company tendered into court $312.19, the difference in value between $\frac{1}{8}$ of $\frac{1}{8}$ and $\frac{1}{64}$ of $\frac{1}{8}$ of the min-

eral production. In their answer appellants pleaded that the deed executed by them to appellees was without consideration; that the land involved was their homestead, and the acknowledgment of Mrs. Jones was defective, in that the instrument was not explained to her privily and apart from her husband. They alleged that the instrument by its terms conveyed only a $\frac{1}{64}$ of $\frac{1}{8}$ of the minerals, and that, if they were mistaken in their construction thereof, same should be reformed and made to conform to the real agreement of the parties. The case was tried before the court without a jury and judgment was rendered in favor of appellees against Consolidated Gasoline Company for the amount tendered by it in court, and the deed was construed to convey $\frac{1}{64}$ of the minerals produced from the land and $\frac{1}{64}$ of the rentals to be paid under the existing lease or future leases. Findings of fact and conclusions of law appear in the transcript.

The first question for decision is the correct construction of the royalty deed. In the granting clause the interest conveyed is "an undivided $\frac{1}{8}$ of $\frac{1}{8}$ royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land." Then follows a description by metes and bounds of two tracts of land, after which is this recital: "This sale also covers a $\frac{1}{8}$ of $\frac{1}{8}$ royalty interest in the 80 acres out of the above section, which is now leased to the Texas Company, and the sale of this royalty in the said 80 acres is made subject to the lease to the Texas Company," etc.

The instrument provides: "It is understood and agreed that $\frac{1}{8}$ of $\frac{1}{8}$ of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantees and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided $\frac{1}{8}$ of $\frac{1}{8}$ of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantees, owning $\frac{1}{8}$ of $\frac{1}{8}$ of all oil, gas and other minerals in and under said lands, together with $\frac{1}{8}$ of $\frac{1}{8}$ royalty interest in all future rents."

We find no ambiguity whatever in the recitals above quoted. The language, to our minds, is clear. The land, at the time the royalty deed was executed, was under an oil and gas lease, under the terms of which $\frac{1}{8}$ royalty was to be paid to the lessors. This deed conveyed to the grantees $\frac{1}{8}$ of this $\frac{1}{8}$ royalty, and $\frac{1}{8}$ of $\frac{1}{8}$ or $\frac{1}{64}$ of any money rentals which might be paid to extend the terms of the lease. It definitely described the interest which grantees were to have in future rentals and royalties, in the event the then existing lease should be cancelled or forfeited The apparent ambiguity in the instru-

ment results from the following recital therein: "Said land being now under an oil and gas lease, executed in favor of E. A. Clayton, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes $\frac{1}{8}$ of $\frac{1}{8}$ royalty of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease."

Appellants construe this recital as if it were $\frac{1}{8}$ of $\frac{1}{8}$ of the royalty. Thus construed, this recital is in conflict with other portions of the deed. It is our duty to construe the instrument as a whole, with the view of arriving at the real intention of the parties, and if the language of the provision last above quoted is itself ambiguous, it should be given that construction which will harmonize it with the other plain provisions thereof, rather than a construction which would set it in direct conflict therewith. Smith v. Westall, 76 Tex. 509, 13 S. W. 540; Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1043. By order of the trial court the original deed has been sent to this court. It discloses that it was prepared by filling in blanks in a printed form. The portion italicized above was inserted in a blank, and that fact accounts for the apparent ambiguity in this recital. The instrument as a whole is not ambiguous. At most, one provision thereof is ambiguous, and it is susceptible of a meaning which harmonizes the whole. It is plainly our duty to give it such meaning, and thereby avoid a conflict. The trial court did not err in his construction of the instrument, and in awarding judgment against the Consolidated Gasoline Company for the amount tendered by it into court.

The contention of appellants that a conveyance of $\frac{1}{8}$ of $\frac{1}{8}$ royalty interest, subject to the terms of an outstanding oil and gas lease, should be construed as a conveyance of $\frac{1}{64}$ of the $\frac{1}{8}$ royalty, rather than $\frac{1}{8}$ of the $\frac{1}{8}$ royalty, is believed by us to be untenable, and is therefore rejected.

In appellees' petition they incorrectly designated Bettie B. Vestal as the wife of W. C. Bedford, and it is the contention of appellants that this error rendered the petition subject to a general demurrer. This contention is overruled. An error of this nature cannot properly be questioned by a general demurrer.

Appellants question the finding of fact that the royalty deed was duly acknowledged and contend that the acknowledgment of Mrs. Jones was not taken privily and apart from her husband as required by the statute. The evidence on this issue is as follows:

N. H. Jones testified: "As to whether he told my wife in my presence about what was in that deed; I was standing in the door in the office when she signed, but then I couldn't hear it real good what this lady said to her. As to whether Bob Grisham was there talking

to her; he was in the office, in the same room where my wife and I were. Of course, I was standing there. As to whether I heard that woman in there, I couldn't understand what that woman said, I couldn't understand just what she said. I think, as well as I remember, Judge Grisham read it over right there in the presence of me and my wife. That was before we signed it."

Mrs. S. A. Jones testified:

"He read the instrument over to us and I said 'this ¹⁄₆₄ of it is that this ⅛ of ⅛?' and he said '⅛ of ⅛ was ¹⁄₆₄,' and that is the way he explained it and when the woman taken my acknowledgment that is the way she explained it.

"We was in Judge Grisham's office when we signed the instrument. Judge Grisham had walked out when I signed it and Mr. Jones had walked there to the door. Judge Grisham was in the other room and Mr. Jones was in the door that lead out to where Judge Grisham was, and the woman was in there with me. That door was not shut. He was about half way across the house from me, I don't know how far in feet, I guess three or four feet, or two or three feet, I don't know how far exactly. I could see him when I signed that deed, he was standing in the door."

The attack is made on the basis that the acknowledgment of Mrs. Jones was not taken privily and apart from her husband. Under the authorities this evidence is sufficient to support the court's finding that the acknowledgment was taken in compliance with the requirements of the statute as against the attack made thereon. Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Richmond v. Hog Creek Oil Co. (Tex. Civ. App) 229 S. W. 563; Speer on Marital Rights (3d Ed.) § 244, p. 292.

There are many bills of exceptions in the record challenging the action of the trial court in admitting the testimony of certain witnesses. We have considered all of these bills, but no one of them presents any error. The testimony complained of was all admissible under the pleadings of the parties, in which each party was seeking, in the alternative, to have the instrument reformed. Such pleadings rendered admissible testimony that otherwise should, and doubtless would, have been excluded by the trial court.

Appellants seriously insist that by the overwhelming preponderance of the evidence the real intention of the parties was to convey a ¹⁄₆₄ of the ⅛ royalty, and that the instrument, if construed to convey a greater interest, should be reformed. We have carefully read this testimony and find that there is in it support for appellants' contention, but appellees' testimony well supports the judgment rendered. It is a case of conflict in the evidence and the trial court has set the matter at rest by resolving the conflict in favor of the appellees.

Affirmed.

## On Rehearing.

FUNDERBURK, J.

■■ We are convinced that, in our original opinion, we wrongly construed the written instrument in question. The interest conveyed by said instrument is one of two different things, namely: (a) It is a conveyance of ⅛ of the royalty provided to be paid by the lessee to the lessor in the leases by N. H. Jones and wife to Clayton, and by said lessors to the Texas company; (b) or it is a conveyance of a ¹⁄₆₄ interest in and to all the oil, gas, and other minerals in and under the lands *subject to* the terms and provisions of said leases. If it can be determined, from the terms and provisions of the instrument alone, which of these two different characters of interests was intended to be conveyed, it is our duty to make such determination without reference to any parol testimony designed to show the intention of the parties. The only difficulty in ascertaining the intention of the parties arises from the employment of the figures ⅛ of ⅛ and the word "royalty" in connection therewith, throughout the instrument, but particularly in the granting clause, as follows: "⅛ of ⅛ *royalty*." If we omit entirely this word "royalty" as here used, the instrument becomes clear and unambiguous and shows a conveyance of ¹⁄₆₄ of the oil, gas, and other minerals in and under the land *subject to* the terms and provisions of a lease of 80 acres to the Texas company, and of the remainder of the land to E. A. Clayton. It is thus clearly shown that the effect of subjecting the conveyance to said leases is to give the grantee a ¹⁄₆₄ of all of the oil royalty and gas rental or royalty due, and to be paid under the terms of said leases. If a proper construction of the instrument required us to determine with certainty the sense or meaning which the word "royalty" was intended to have, it may be that the entire instrument could not be construed unless aided by extrinsic evidence. But it is not necessary, we think, to ascertain just what was meant by the use of the word, provided we can certainly determine that it was not used in the sense of referring exclusively to the royalty provided to be paid under the terms of said leases. The instrument itself, when read in the light of the well-known rules of construction, shows clearly that the word was employed in no such sense. The instrument conveyed more than a mere royalty interest. It precisely defined the interest of the grantee in the oil, gas, and other minerals to exist after the leases, for any reason, should become canceled or forfeited. In defining such inter-

est the instrument did not purport to grant the same as something else, or in addition to the interest stated in the granting clause. On the contrary, it certainly appears, we think, that the granting clause included the full extent of the estate sought to be conveyed. The subsequent provisions were intended: (1) To subject the full estate granted to the terms of the existing leases; (2) to define the effect of subjecting same to said leases, namely, to limit the interest of the grantee to the same proportionate interest in the royalties and rentals as his interest in all the minerals; (3) to declare that, after cancellation or forfeiture of the leases, the interest should be the same as stated in the granting clause (with a certain reservation in the grantors to execute future leases); and (4) to make clear that under future leases the actual beneficial interest of the grantees was to be limited to the same proportionate interest in royalties and rentals as the interest in the entire mineral estate. It being clear from the instrument that the interest or estate granted included more than the particular royalty interest payable under the terms of the leases, it becomes unimportant just what was meant by the use of the word "royalty," since whatever it was, other portions of the instrument show clearly that the conveyance was of a ⅛ of ⅛, or 1/64, interest in and to all the oil, gas, and other minerals, subject to the leases, but carrying with it the same reversionary interest after the leases ceased to be enforced.

It is interesting to speculate why the parties said "⅛ of ⅛" rather than "1/64." This, as we see it, is the sole support of the contention that the last "⅛" referred to a ⅛ royalty provided to be paid under the terms of the leases. A most, effective answer to this argument is to be found in the subsequent provision of the lease to the effect that after the leases should become canceled or forfeited, "an undivided ⅛ of ⅛ of the lease interest and all future rentals," etc., should be owned by the grantees "owning ⅛ of ⅛ of all oil, gas and other minerals," etc. In these provisions the expression "⅛ of ⅛" can mean nothing else than the exact equivalent of 1/64, and at any rate cannot have reference to the particular ⅛ royalty provided in the existing leases. It is not reasonable that "⅛ of ⅛" appearing in the granting clause meant anything different from ⅛ of ⅛ in the provision just quoted, which is certainly used with reference to the estate to exist when there is no lease upon it, and when there is some future lease which, as we well know, may provide a different royalty than ⅛ of the production. Therefore, just as in the case of ascertaining the exact meaning of the word "royalty," it becomes unnecessary for us to determine

just why the parties said "⅛ of ⅛" instead of "1/64," since whatever the reason it is made certain from a reading of the entire instrument that the factors, ⅛ of ⅛, were used as meaning the same thing as 1/64.

From this interpretation of the instrument it clearly appears that the judgment of the trial court was erroneous. It correctly adjudges the interest conveyed to be a 1/64 mineral interest, but incorrectly adjudges the plaintiffs to be entitled to ⅛ of the royalties or rentals. The judgment fails to subject the 1/64 mineral interest to the terms of the leases and thereby limit the interest of the grantees in the accumulated royalty proceeds to 1/64 thereof. The tendered fund being the difference between ⅛ of the royalty and 1/64 of the royalty, should, under the terms of the instrument as we have interpreted it, have been adjudged to the appellants.

The motion for rehearing will therefore be granted, our former judgment set aside, and judgment will be rendered for the appellants for $312.19, with the order that same be paid over to them, and for costs, etc., all of which is accordingly so ordered.

HICKMAN, C. J. (dissenting on rehearing).

A reconsideration of this case in the light of the motion for rehearing has convinced me that it should be tried again. I believe that appellants' contention that the judgment of the trial court was contradictory should be sustained. The judgment decreed that the instrument in question conveyed to appellees in fee simple as of its date an undivided 1/64 interest in and to all the oil, gas, and other minerals in and under the land described. It then awarded a recovery on a basis of ⅛ of the royalty. By the express provisions of the deed the interest conveyed thereby, whatever it might have been, was subject to the two mineral leases, one in favor of Clayton and the other in favor of the Texas company. If the trial court was right in concluding that the conveyance was of a 1/64 mineral interest, then the very terms of the instrument itself require that we add to that conclusion that the conveyance was subject to the terms of the leases, and a conveyance of a 1/64 mineral interest, subject to the terms of the outstanding leases, should not be construed as a conveyance of 1/64 of the entire mineral production as a royalty. In our original opinion we stated: "The land, at the time the royalty deed was executed, was under an oil and gas lease under which ⅛ royalty was to be paid to the lessors." The record is found upon review not to justify that statement of fact. Neither of the leases existing upon this land was introduced in evidence, and we are not advised as to their terms. If in fact these leases did provide for a ⅛ royalty on all the minerals,

that would be a strong circumstance indicating that the intention of the parties to this conveyance was to convey a ⅛ of that royalty interest, regardless of the fact that the instrument conveyed a lesser interest under future leases. On the other hand, if the leases did not contain such provisions for royalty, an impossible situation might result when it was attempted to construe the instrument as a conveyance of ⅛ of the ⅛ royalty. Having decided that there was error in the judgment, we would not be authorized to reform and affirm where it is uncertain that the error could be cured by reformation.

It is my view that it is impossible for us properly to determine the rights of the parties in the absence of knowledge of the contents of these leases. I therefore think that the cause should be remanded for another trial generally, upon which trial the leases could be introduced in evidence and the oral testimony on the question of the intention of the parties be developed in view of the situation existing at the time the instrument was executed.

I cannot agree with my associates that the record before us warrants us to render judgment for appellants. The opinion of the majority on rehearing seems to me to be built upon an incorrect premise. It is assumed and asserted at the beginning of the opinion that the interest conveyed was either (a) a royalty interest of ⅛ of the royalty to be paid under the leases, or (b) a 1/64 mineral interest subject to the terms of the leases. Of course, with that premise, no other conclusion could be arrived at except the one there announced, for it is evident that something more than a mere royalty interest was conveyed. I do not agree that, by demonstrating that something more than a mere royalty interest was conveyed, the conclusion must follow that therefore the royalty interest conveyed was 1/64 of ⅛ rather than ⅛ of ⅛, as expressly provided in the instrument. Generally, instruments of this character convey the same proportionate interest in the royalty which they do in the minerals as such. But it would not be contended that an instrument could not convey a different proportion in the royalty under an outstanding lease to that conveyed in the minerals in the event the lease expired. We have the original instrument before us for our inspection. The granting clause is all printed except this: "⅛ of ⅛ royalty." The first instrument drawn conveyed 1/64 of the royalty and the grantees refused to accept it on the ground that their contract was for ⅛ of the royalty. This court, by reversing and rendering this judgment, necessarily holds that the instrument is free of ambiguity which would render inadmissible any evidence throwing light upon the intention of the parties.

I cannot construe the opinion in any other light. To my mind, no more ambiguous instrument has ever been presented to me for construction. Assuming that a retrial would disclose that a ⅛ royalty was provided by the leases, then to my mind the effect of rendering this cause would be to hold that the use of the word "royalty" in the written portion of the instrument must yield to the printed portion and be wholly disregarded, or, if not, then that we should change the term "⅛ of ⅛ royalty" to "1/64 of ⅛ royalty." This court held, in Curry v. Texas Co., 8 S.W.(2d) 206, 209, that the expression "½ of ⅛ of .08 cents" was ambiguous, and considered oral testimony that would change the word "cents" to "dollars." Surely there is much more ambiguity apparent in the instrument under construction in this case than there was in the instrument there construed. Courts are concerned primarily with arriving at the intention of the parties, and a slight variation from a clear expression in an instrument is sufficient to create an ambiguity authorizing admission of oral testimony to determine the intent.

The instrument in this case was drawn by the grantors' own attorney. It is, to my mind, certainly ambiguous. By well-known principles of law in such a situation it should receive that construction which would carry the greatest estate which said instrument might be construed to convey. I believe that, if by the terms of the leases outstanding upon this land at the time the instrument was drawn, Jones and wife were to receive a ⅛ royalty, then, in view of the fact that it was clearly the grantees' understanding that they were to receive ⅛ of the royalty, and in view of the fact that the grantors' attorney prepared the instrument, and giving effect to the rule that the written portion should control the printed portion, the instrument should be construed as conveying ⅛ of ⅛ royalty payable to the grantors under the terms of the outstanding leases, even though it conveyed a less interest in royalties under future leases, in the event the then existing leases should become canceled. Entertaining these views, I cannot agree with my associates that judgment should be here rendered in favor of appellants.