### OLVEY et al. v. JONES et al.

No. 4982.

Court of Civil Appeals of Texas. Texarkana.

June 18, 1936.

Rehearing Denied July 2, 1936.

Saye & Saye, of Longview, for appellants.

Chauncey & Chauncey, of Longview, for appellees.

SELLERS, Justice.

Minnie Jones and a number of others brought this suit against J. W. Olvey and others in trespass to try title and to reform a certain royalty contract, the material portions of which are as follows:

"* * * For and in consideration of the sum of Two Thousand Seven Hundred Fifty & No/100 Dollars ($2,750.00) cash in hand paid by J. W. Olvey, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided one-half (½) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Gregg County, Texas, to-wit: [Here follows field notes covering 83.23 acres, but which concludes with the following phrase, 'Containing 55 acres, more or less'; and said description, after referring to a number of deeds, contains the further clause, 'and includes any excess, if any.']

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease, executed in favor of B. A. Skipper and Clark Sample, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half (½) of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one-half (½) of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-half (½) of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee, owning one-half (½) of all oil, gas and other minerals in and under said lands, together with one-half (½) interest in all future rents.

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Grantee herein, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to

warrant and forever defend all and singular the said property unto the said Grantee herein, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

Plaintiffs allege that, at the time the above contract was executed, it was understood by all parties thereto that said tract of land only contained 55 acres, and that the description only described 55 acres, whereas the tract in fact contained and there was described 83.23 acres; that said land was conveyed by the acre and for a consideration of $100 per acre. It is further alleged that said contract was intended to convey only one-half the minerals under 55 acres for $2,750; same being $100 per acre for the interest intended to be conveyed. No other mistake was alleged in the execution of the contract. Plaintiffs in their petition further seek to recover from defendants the sum of $5,813.60 excess royalty paid by the lessee to defendants from production on 83.23 acres. In other words, plaintiffs contend that defendants were only entitled to 27.50/83.23 interest in the royalty payable under the lease rather than a one-half interest which they have been receiving. The lease admittedly covers 83.23 acres.

The defendants having answered, the cause was submitted to a jury on the following issues:

"No. 1: Find from a preponderance of the evidence how many acres the plaintiffs and the defendant J. W. Olvey believed were in the tract of land in question at the time the contract and mineral deed were signed by the parties. Answer by giving the number of acres." Answer: "55."

"No. 2: Do you find from a preponderance of the evidence that the plaintiffs sold the minerals in question, and that the defendant J. W. Olvey purchased the minerals in question on a per acre basis? Answer Yes or No." Answer: "Yes."

"No. 3: Do you find from a preponderance of the evidence that the plaintiffs intended to sell and that the defendant J. W. Olvey intended to buy 27½ full royalty acres under said tract of land? Answer Yes or No." Answer: "Yes."

"No. 4: Do you find from a preponderance of the evidence that the plaintiffs intended to sell and that the defendant J. W. Olvey intended to buy one-half of the minerals under the tract of land for a consideration of Twenty Seven Hundred Fifty ($2,750.00) Dollars, regardless of the number of acres contained in the tract? Answer Yes or No." Answer: "No."

Upon the jury's verdict, the court entered judgment reforming the mineral contract so as to allow defendants a 27.50/83.23 interest in the minerals therein instead of 27.50/55, or one-half interest, and entered judgment for plaintiffs against defendants for the sum of $5,449.98, same being the difference between one-half the royalty actually paid to defendants under the contract, and the interest allowed by the court under the contract as reformed, which was 27.50/83.23.

From this judgment the defendants have appealed to this court.

■ We deem it unnecessary to consider all the assignments of error brought forward by appellants, since we are of the opinion that appellees' case as alleged will not support the judgment of the court, and in so holding we adopt appellees' own construction of their pleadings as expressed in their first counter proposition: "The basis for plaintiffs' cause of action is that at the time of the execution and delivery of the deed, the plaintiffs and the defendant J. W. Olvey mutually believed that the tract of land described in said instruments contained only 55 acres; and the plaintiffs having alleged that instead of the tract containing 55 acres, it actually contained 83.23 acres, a difference of 28.23 acres, and that the sale was made on a per acre basis, and there was testimony to support such allegations, the Court properly refused to instruct a verdict for defendants and properly reformed the deed so as to correct the mutual mistake made by the parties, so that the fractional interest conveyed by the plaintiffs to the defendant J. W. Olvey would be 27.50/83.23, instead of 27.50/55."

As we understand appellees' construction of their pleading, it is that their only complaint is based upon the fact that all the parties in executing the contract understood that the description of the land contained in the instrument only covered 55 acres instead of 83.23, which was actually covered by the description. Therefore appellees' rights under this contract could in no event, under their pleadings, be greater than they would have been had the contract in fact described 55 acres of land or 55 of the 83.23 acres covered by

the lease to which it is subject. This lease was not introduced in evidence, but we assume it is in the ordinary form now in use. It appears from the evidence that the lease covers 83.23 acres of land. The royalty contract here sought to be reformed is almost identical with a number of such contracts that have been construed by our courts, and it seems to be the uniform opinion of our courts that under this form of royalty contract the grantee secures: (1) A proportion of the royalty under the existing lease; (2) proportion of delayed rentals paid under the existing lease; and (3) a present vested interest in the possibility of reverter. Thuss on Texas Oil & Gas, § 123, p. 165, and authorities there cited.

The royalty contract herein involved by plain and unambiguous terms grants to grantee an undivided one-half interest in all the royalty payable under the terms of the lease to which it is subject. The Commission of Appeals in Hoffman v. Magnolia Petroleum Co., 273 S.W. 828, had before it a royalty contract in all material respects the same as the one under consideration here. The royalty contract described 90 acres, which was a part of 320 acres covered by the lease to which it was subject, and it was held that the royalty contract conveyed an undivided one-half interest in the possibility of a reverter under the 90 acres, and one-half of all the royalty under the lease; that is, one-half of all the royalty from the 320 acres and also one-half the delayed rentals paid under the lease.

From the above authority it seems clear to us that appellees are not entitled to any part of the royalties provided for in the royalty contract, and a reformation of this clause of the royalty deed cannot be had solely on a showing that it was intended by the parties to describe 55 acres rather than 83.23 acres, for the reason that the number of acres described in the royalty contract does not have the legal effect of changing the proportion of royalty which the grantee is to receive under the contract, and, before appellees would be entitled to any part of said royalties, the reformation would not only have to correct the description so as to convey only 55-acre undivided interest in the 83.23 acres, but they would also have to go further and prove that the clause which gives to the grantee one-half the royalty

subject to the lease was intended by the parties to refer to the land described in the royalty contract rather than to the land described in the lease, as it does under the authority above quoted if no reformation is had.

For the above reasons, the judgment of the trial court is reversed, and the cause remanded.

HALL, J., disqualified and not sitting.