[Civ. No. 3195. Fourth Dist., Feb. 17, 1947.]

PAUL J. BARNARD et al., Respondents, v. MAX B. JAMISON et al., Appellants.

Jamison & Jamison and Zeutzius & Steffes for Appellants.

Maddox & Abercrombie for Respondents.

MARKS, J.—Two cases were brought by plaintiffs to recover money had and received by defendants, and to declare the rights of the parties under two conveyances of oil interests in real properties, and two oil leases now on the properties. The cases are consolidated on appeal. Plaintiffs recovered judgments and defendants have appealed.

The facts are not in dispute. Only questions of law were decided by the trial court and are argued here.

Max B. Jamison and Millie L. Jamison, his wife, were the owners of parcels of land in Fresno County which, prior to May 26, 1941, were under lease to the Richfield Oil Corporation for drilling for and producing oil, with a ⅛ royalty to be paid to the landowners.

While the Richfield Oil Corporation lease was in full force and effect, Mr. and Mrs. Jamison, on May 26, 1941, executed two grant deeds, the one conveying a ½ of 1 per cent, and the other 2 per cent of the oil, gas and other hydrocarbon substances in the leased property to Paul J. Barnard and to Harold A. and Jeanette R. Barnard respectively. Except as to the interests conveyed and the names of the grantees the deeds are identical.

Afterwards Mr. and Mrs. Jamison conveyed fractions of the landowners' royalty to their children. For the purpose of this opinion we will accept as correct the admissions of counsel, if we correctly understand them, that after the delivery of the two deeds we have mentioned, and during the life of the Richfield lease, the Jamisons were the owners of 10 per cent and the Barnards the owners of 2½ per cent of

the hydrocarbons in the leased property, and the Richfield Oil Corporation the owner of a *profit à prendre* of 87½ per cent of those substances. That they were tenants in common of those respective interests cannot be doubted under the established law of California. (*Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]; *Standard Oil Co. of California* v. *John P. Mills Organization,* 3 Cal.2d 128 [43 P.2d 797]; *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237]; *Dabney* v. *Edwards,* 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822]; *Schiffman* v. *Richfield Oil Co.,* 8 Cal.2d 211 [64 P.2d 1081]; *La Laguna Ranch Co.* v. *Dodge,* 18 Cal.2d 132 [114 P.2d 351, 135 A.L.R. 546]; *Dutton* v. *Interstate Investment Co.,* 19 Cal.2d 65 [119 P.2d 138]; *Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814 [129 P.2d 383].) There are also numerous decisions by District Courts of Appeal following the rule of *Callahan* v. *Martin, supra,* but that rule is so well established that we need not cite them. They are cited in Shepard's California Citations under the Callahan case.

After the execution of the two deeds the Richfield Oil Corporation released the leased property and its lease was cancelled. Thereafter, in 1943, Max B. Jamison and his wife and children, together with Harold A. Barnard and his wife and Paul J. Barnard, as lessors, executed two leases to two portions of the property formerly leased to the Richfield Oil Corporation. The respective lessees were the General Petroleum Corporation of California and the Chanslor-Canfield Midway Oil Company. The leases reserved a ⅛ royalty to the lessors and were for a period of 20 years, and so long thereafter as hydrocarbons might be produced therefrom, so the lessees each acquired a *profit à prendre* in the leased property and became tenants in common with the lessors.

The lessees paid $7,169.87 as a bonus, or, as counsel chose to call it, "a delayed rental," at the time of the execution of the leases. Mr. Jamison paid Paul J. Barnard $35.85 or ½ of 1 per cent of this money, and Harold A. Barnard and his wife $143.40 or 2 per cent of it, and retained the balance for himself and his family. Paul J. Barnard claimed there was due him an additional $250.93, and Harold A. Barnard and his wife claimed that there was an additional $1,003.78 due them. The trial court gave judgment to the respective plaintiffs for those amounts and construed the rights of all the parties in future oil royalties under the existing leases as giving the Barnards 2½ per cent of the total production to be taken

out of the 12½ per cent, or ⅛ landowners oil royalty, and the Jamisons the balance. In other words, if an oil well were brought in with a net production of 100 barrels a day, the Barnards would receive 2½ barrels and the Jamisons 10 barrels or the equivalent in money. During the trial Mr. Jamison, an attorney at law who represented defendants in the superior court, conceded that this would be a correct division of the royalties after oil was produced, but sought to differentiate between the division of royalty oil and the money paid by the lessees for delayed rentals or bonus as we believe it is generally known.

Counsel now representing defendants, if we understand their position correctly, seek to withdraw from this position and maintain that the Jamisons are entitled to 97½ per cent of the bonus money and the same per cent of the oil royalty, and the Barnards the balance. Taking the same assumption we used before, of a well producing a net 100 barrels of oil, the ⅛ royalty would be 12½ barrels and under the present contentions of the Jamisons they would receive 12.1875 barrels and the Barnards .3125 barrels or the equivalent in money.

This argument must be based on the following reasoning: When the deeds were made to the Barnards the Richfield Oil Corporation owned as a *profit à prendre* 87½ per cent of the oil rights leaving 12½ per cent to the landowners. The deeds conveyed 2½ per cent of the oil to the Barnards leaving the balance of the royalty to the Jamisons. When the Richfield Oil Corporation released its 87½ per cent interest, that entire interest passed to the Jamisons as owners of the fee and none of it to the Barnards. From that point they proceed to reason that when the two new leases were executed the lessors conveyed away 87½ per cent of their oil rights so that the remaining interests of both groups were reduced proportionately to the percentages we have already indicated.

We find the clear answer to this argument in the deeds of conveyance to the Barnards. As the material portions of these deeds are identical we will quote from but one as follows:

". . . Max B. Jamison, a married man and Millie L. Jamison, his wife, do hereby grant, sell, assign, set over and convey unto Harold A. Barnard and Jeanette R. Barnard, as Joint Tenants, Two Per Cent (2%) of all oil, gas, other hydrocarbon substances and other minerals in and under and that may be produced, saved and sold or removed from those

certain lands situate in the County of Fresno, State of California, described as follows: (Description.) . . .

"It is expressly provided that the interest hereby conveyed is chargeable with its proportionate share of all deductions for taxes and other costs permitted to be withheld by the Lessee under said Oil and Gas Lease and under any other Oil and Gas Lease in which said premises, or any portion thereof, may hereafter be included.

"It is also expressly provided that Grantee herein at all times and under any such Oil and Gas Lease shall be entitled to receive and shall be paid said full Two Percent (2%) of all the oil, gas and other hydrocarbon substances hereby conveyed to Grantee, and Grantee's Proportionate share of all cash and oil bonuses, rentals for delayed drilling, and other considerations paid by any such Lessee."

This is a clear grant of 2 per cent of all the hydrocarbons in the described property with that interest only chargeable with taxes and other deductions provided for in the leases. The only deductions permitted in the two leases, other than taxes, are oil and gas used in lessees' operations and a percentage of casing head gasoline if any be produced. The provision that the grantees shall be entitled to receive the full 2 per cent of all hydrocarbons produced is clear and explicit and is not subject to interpretation. The final clause to the effect that the grantees shall be entitled to receive their proportionate share of all cash, oil bonuses and rentals for delayed drilling, and any other considerations paid by any lessee, is also clear when construed with the rest of the deed, for the only proportionate share of the grantees, set forth in the deed, is the full 2 per cent of all hydrocarbons "in and under and that may be produced, saved and sold or removed" from the leased land. "The interest created by an assignment depends upon the intention of the parties (Citing cases) and while that intention is determined primarily from the terms of the instrument, the language of the assignment must be construed in the light of the facts and circumstances of the particular case." (*Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718 at page 730 [134 P.2d 777].) Here it is admitted that when the deeds were executed during the life of the Richfield Oil Corporation lease the 2½ per cent oil interest conveyed to the Barnards was carved entirely from the Jamison interests which were reduced by that amount. We can see no good reason why there could be any other intention imputed to the

parties in executing future leases when the deeds expressly provide that the grantees should receive the same percentages under any other oil and gas leases which might thereafter be executed. Further, the delayed rental or bonus, was paid to postpone the drilling obligations of the lessee and in lieu of the $\frac{1}{8}$ royalty to be paid when oil was discovered in paying quantities. This furnishes an additional reason for concluding that the Barnards should receive the same percentage of the money paid by the lessees that they would have received had the drilling operations proceeded successfully and produced oil in paying quantities.

The conclusion that the Barnards are entitled to receive the same proportion of the money paid by the lessees as a bonus or "rentals for delayed drilling" is further fortified by the holding that "the words 'royalty' and 'rent,' it has been held, 'are used interchangeably to convey the same meaning'; i. e., 'the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows' (*Nelson* v. *Republic Iron & Steel Co.* (1917), 240 F. 285, 291, 293 [153 C.C.A. 211]; *Elsinore Oil Co.* v. *Signal Oil etc. Co.* (1935), 3 Cal.App.2d 570, 573 [40 P.2d 523].)" (*Denio* v. *City of Huntington Beach,* 22 Cal. 2d 580, at page 596 [140 P.2d 392, 149 P.2d 320].)

Counsel for the Jamisons cite the case of *Hochsprung* v. *Stevenson,* 82 Mont. 222 [266 P. 406], and argue that it supports their position and is decisive of the question presented by this appeal. This action was one to quiet title to real property. The appellant claimed $4\frac{1}{2}$ per cent interest in all of the oil, gas and other minerals in or under the leased premises under one conveyance, and another 9/25 interest under another conveyance. The court upheld the appellant's claim to the $4\frac{1}{2}$ per cent interest which was admittedly valid under an assignment but denied its right to the 9/25 interest because the purported assignment "does not contain any operative words of conveyance" and was therefore ineffective. Thus the difference between the two cases is apparent and the Montana case is not controlling here as the words of conveyance in the deeds to the Barnards could not be plainer.

As the contracts between the parties clearly define their rights and as there is nothing in the record to indicate that at the time of the execution of the deeds they had any other intention than that expressed in the writings and as the judg-

ment carries out that intention and puts it into effect we cannot disturb it here.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 13, 1947, and appellants' petition for a hearing by the Supreme Court was denied April 17, 1947.