[Civ. No. 19747.   Second Dist., Div. Three.   Dec. 31, 1953.]

J. HOWLAND PADDOCK, Respondent, v. LEANDRO VASQUEZ et al., Appellants.

Burke, Williams & Sorensen and Reynolds, Painter & Cherniss for Appellants.

John C. Gillham for Respondent.

VALLÉE, J.—Plaintiff brought this action for a declaration of his rights under a mineral deed, and dependent on the determination of his rights to recover money due.

On January 15, 1937, Anselmo M. Vasquez and Bertha R. Vasquez, being the owners of a parcel of realty, entered into an oil and gas lease of the realty with Ohio Oil Company, as lessee, by which Ohio agreed to pay the Vasquezes, as landowner's royalty, the equal 1/8th part (12½%) of the value of all oil, gas, and other hydrocarbon substances removed from the demised premises. On April 24, 1940, while the lease with Ohio was in force, the Vasquezes, pursuant to a permit issued to them by the commissioner of corporations, executed to H. C. Bailie the instrument in question, which reads:

"GRANT DEED

"ANSELMO VASQUEZ, also known as Anselmo M. Vasquez, and BERTHA R. VASQUEZ, husband and wife, herein called Grantors, for and in consideration of the sum of Ten Dollars ($10.00) in hand paid, and other good and valuable consideration, receipt whereof is hereby acknowledged, do hereby grant to H. C. BAILIE, herein called Grantee, an

undivided Three (3%) per cent of 100% of all petroleum, oil, gas and other hydrocarbons within or underlying, or which may be produced, saved and sold from that certain real property located in the County of Los Angeles, State of California, more particularly described as follows, to wit:

"[Description]

"Said real property is presently subject to an oil and gas lease dated the 15th day of January, 1937, executed by Anselmo Vasquez, also known as Anselmo M. Vasquez, and Bertha R. Vasquez, as lessors, and The Ohio Oil Company, an Ohio corporation, as lessee. Said lease was filed for record on February 19, 1937, in the office of the County Recorder of Los Angeles County, California, and provides for a royalty payment to the Lessors of one-eighth (1/8th) part of all petroleum, oil, gas and other hydrocarbons extracted and saved from said real property. This Grant Deed includes, but is not limited to 6/25ths of all bonuses, rents, royalties and other benefits which may accrue to the lessors under the terms of said Oil and Gas Lease or any extension or assignment thereof, or any other oil and gas lease that may be entered into with respect to said real property from and after the date hereof.

"To HAVE AND TO HOLD unto the said grantee, H. C. BAILIE, his heirs, executors, administrators, successors and assigns forever."

On May 6, 1940, Bailie and wife, pursuant to a permit from the commissioner of corporations, executed to plaintiff an instrument identical in wording with the foregoing instrument from the Vasquezes to Bailie. This instrument also contained a clause that it was its intent and purpose to grant to plaintiff the total interest in the realty conveyed by the deed from the Vasquezes to Bailie.

In June of 1949, Ohio quitclaimed to the Vasquezes all of its interest in the lease. On April 16, 1950, the Vasquezes conveyed the realty to defendants Leandro Vasquez and Ruby Alari, as trustees. On June 1, 1950, defendants Vasquez and Alari, as lessors, entered into an oil and gas lease of the realty with defendant Southern California Petroleum Corporation, referred to as the corporation, as lessee. At the time this lease was executed the corporation paid $5,000 to defendants Vasquez and Alari as a bonus for executing the lease. By the lease the corporation agreed to pay defendants Vasquez and Alari a landowner's royalty of 18 per cent

of all of the oil, gas, and other hydrocarbon substances produced and saved from the leased lands. About November 13, 1950, the corporation completed a well on the property and placed it on production.

The facts as we have stated them were agreed to by written stipulation.

The court concluded: 1. Under the grant deed of April 24, 1940, from the Vasquezes to Bailie, plaintiff's predecessor in interest, the Vasquezes granted unto Bailie 6/25ths of all bonuses, rents, royalties, and other benefits which accrued and which may accrue to the lessors under the lease from Vasquez and Alari to the corporation. 2. By reason thereof plaintiff is entitled to judgment declaring he is the owner of and entitled to 6/25ths of the 18 per cent landowner's royalty payable under that lease. 3. Plaintiff is entitled to judgment against Vasquez and Alari, as trustees, declaring he was and is entitled to 6/25ths of the $5,000 bonus, that is, $1,200, but since he had received $833.33 of the $1,200 he was entitled to a money judgment of $366.67. Judgment was entered accordingly. Defendants appeal.

Defendants' point is that the grant deed of April 24, 1940, provides that the grantee shall receive 3/18ths of 18 per cent and not 6/25ths of 18 per cent, because 3/18ths of 18 per cent is the same as 6/25ths of 12½ per cent. They say the 6/25th language was not meant to convey any more than the 3 per cent of 100 per cent conveyed by the first part of the deed; thus, they add, plaintiff's royalty interest under the lease with the corporation is 3 per cent of 18 per cent rather than 6/25ths. We have concluded that the trial court correctly construed the deed and that defendants' contention cannot be sustained.

A grant is to be construed in like manner with contracts in general. (Civ. Code, § 1066.) A clear and distinct limitation in a grant is not controlled by other words less clear and distinct. (Civ. Code, § 1067.) A grant is to be construed in favor of the grantee, with exceptions not relevant here. (Civ. Code, § 1069.) If several parts of a grant are absolutely irreconcilable, the former part prevails. (Civ. Code, § 1070.) A contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties. (Civ. Code, § 1643.) An interpretation which gives effect is preferred to one that makes

void. (Civ. Code, § 3541.) ■ The primary objective of all interpretations of a conveyance is to ascertain and to give effect to the intention of the parties. (9 Cal.Jur. 245, § 119.) ■ Arbitrary and technical rules of construction are not to be invoked if the intention of the parties can be plainly discovered from the four corners of the instrument without their aid. (9 Cal.Jur. 243, § 117; 16 Am.Jur. 570, § 237.) ■ The intention of the parties is to be gained from a consideration of the entire instrument though the immediate objective of the inquiry is the meaning of an isolated clause, taking into consideration every provision, clause and word, whether of grant, or description, or of qualification, exception, or explanation. (9 Cal.Jur. 255, § 128.) ■ Every part of the deed is to be given effect if reasonably practicable. (*Idem.*)

■ Two separate and distinct mineral interests can be conveyed by one instrument. One interest may be an absolute interest in the minerals; the other may be in the royalty to be payable under an existing lease and under any future lease. The fractional interest in the royalty need not correspond with the interest in the minerals; the royalty may be larger or smaller. (*Richardson* v. *Hart,* 143 Tex. 392 [185 S.W.2d 563].)

■ We think the deed is clear, definite, certain, and unambiguous. (See *Richardson* v. *Hart, supra,* 143 Tex. 392 [185 S.W.2d 563].) The first paragraph preceding the description grants an undivided 3 per cent of 100 per cent in the minerals. If the deed had stopped there the parties would have been tenants in common, the grantor owning 97 per cent and the grantee 3 per cent of the minerals subject to the Ohio lease. (*Barnard* v. *Jamison,* 78 Cal.App.2d 136, 137-138 [177 P.2d 341].) But the deed did not stop there. It went on to explain that the property was subject to the Ohio lease, and that said lease provided for a 1/8th royalty. The second paragraph then clearly states that the conveyance includes, but is not limited to, 6/25ths of all bonuses, rents, royalties, and other benefits which may accrue to the grantors under the terms of the Ohio lease, "or any other oil and gas lease that may be entered into with respect to" the property. Six twenty-fifths of 1/8th (12½%) equals 3 per cent of 100 per cent. Six twenty-fifths of 18 per cent equals 4.32 per cent of 100 per cent. As long as the Ohio lease was in effect, if an oil well were brought in with a net pro-

duction of 100 barrels a day with the royalty of 1/8th or 12½ per cent, the grantor would receive 9½ barrels and the grantee, 3 barrels or the equivalent in money. Under the lease with Southern California Petroleum Corporation, with the same assumption a well producing a net 100 barrels of oil a day with the royalty of 18 per cent, the grantor would receive 13.68 barrels and the grantee, 4.32 barrels or the equivalent in money.

In *Barnard* v. *Jamison*, 78 Cal.App.2d 136 [177 P.2d 341], a conveyance was made while an oil and gas lease was in force. It conveyed 2 per cent "of all oil, gas, other hydrocarbon substances, and other minerals in and under and that may be produced, saved and sold or removed from" the land. This provision was followed by a clause to the effect that the interest conveyed was chargeable with its proportionate share of taxes and other costs permitted to be withheld by the lessee under the lease and under any other lease. The conveyance then read: "It is also expressly provided that Grantee herein at all times and under any such Oil and Gas Lease shall be entitled to receive and shall be paid said full Two Percent (2%) of all the oil, gas and other hydrocarbon substances hereby conveyed to Grantee, and Grantee's Proportionate share of all cash and oil bonuses, rentals for delayed drilling, and other considerations paid by any such Lessee." The lease was canceled and a new lease with a different company was executed. The new company paid a bonus. The question was what percentage of the bonus was the grantee entitled to. The court held (p. 140): "This is a clear grant of 2 per cent of all the hydrocarbons in the described property with that interest only chargeable with taxes and other deductions provided for in the leases. The only deductions permitted in the two leases, other than taxes, are oil and gas used in lessees' operations and a percentage of casing head gasoline if any be produced. The provision that the grantees shall be entitled to receive the full 2 per cent of all hydrocarbons produced is clear and explicit and is not subject to interpretation. The final clause to the effect that the grantees shall be entitled to receive their proportionate share of all cash, oil bonuses and rentals for delayed drilling, and any other considerations paid by any lessee, is also clear when construed with the rest of the deed, for the only proportionate share of the grantees, set forth in the deed, is the full 2 per cent of all hydrocarbons 'in and

under and that may be produced, saved and sold or removed' from the leased land."

In *Krutzfeld* v. *Stevenson,* 86 Mont. 463 [284 P. 553], the court considered deeds similar to the one in the present case. The deeds granted a 5 per cent interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the described land. This clause was followed by provisions which are set out in the margin.[1] The court held (284 P. 556): "Considering the deeds as a whole, under the modern rule, these explanatory clauses but make clear the intention of the parties, and should be considered, if divisions are made, as a part of the granting clause, and, so considered may either enlarge or diminish the grant so long as it deals with the identical property or interest described in the granting clause; and likewise, where explanatory clauses are incorporated in the habendum, if the intention of the parties is clearly expressed, the habendum may control over the granting clause, as every deed or contract is supposed to express the intention of the parties executing it, and, when called in question in a court, the first inquiry is as to what that intention was as expressed in the instrument, and it is the duty of the court to carry out that intention, if no legal obstacle lies in the way. . . . Under the lease 87½ per cent of the oil and gas produced and saved would be retained by the lessee and 12½ per cent delivered to the landowner; the deed therefore conveyed outright 5 per cent, or two-fifths, of the royalty oil, and declared that this amount should be delivered to the grantee while the lease was in force, but that, if the present lease should be forfeited or canceled, the grantor should 'own' two-fifths of all oil and gas. This, then is a grant of a two-fifths interest in all that the landowner would receive from

---

[1] "And said lands being now under . . . lease . . . in favor of K. G. Luke . . . it is understood and agreed that this sale is made subject to said lease but covers and includes two-fifths of all oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that two-fifths of the money rentals which may be paid to extend the term of said lease is to be paid to the said L. C. Stevenson, Trustee, and, in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interests and all future rentals on said land for oil, gas and mineral privileges shall be owned jointly by John Krutzfeld & Cecilie Krutzfeld, his wife, and L. C. Stevenson, Trustee, each owning 3/5 and 2/5 respectively in all oil, gas or other minerals in and upon said land, together with same proportionate interest in all future rents."

the land during the life of the lease, and a two-fifths interest in all of the oil and gas in or under the land when the same shall have reverted to the landowner on forfeiture or cancellation of the lease." The Kurtzfeld case was followed in *Broderick* v. *Stevenson Consolidated Oil Co.*, 88 Mont. 34 [290 P. 244].

In *Richardson* v. *Hart*, 143 Tex. 392 [185 S.W.2d 563], the deed granted an undivided 1/16th of 1/8th interest in and to all of the oil, gas, and other minerals in and under, and that may be produced from the land, with the right of ingress and egress for the purpose of exploring for and producing minerals. The third paragraph read: "Said land being now under an oil and gas lease executed in favor of C. M. Joiner, Trustee, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 1/16th of 1/8th of all the oil royalty, and gas rental of royalty due and to be paid under the terms of said lease." The court construed the instrument thus (185 S.W.2d 564): "It is clear, we think, that the instrument conveyed two separate and distinct estates in the land. The first was a permanent interest in the minerals in place which was to subsist during and beyond the life of the existing lease. The other was the royalty to be due and payable under the lease. . . . Without any stipulation as to royalties the interest thus conveyed would carry with it by operation of law the right to 1/128 of the royalties paid under any lease. However, the parties did not leave the matter of the payment of royalties under the existing lease to be determined by operation of law. In the third paragraph of the deed they made a covenant in regard thereto which passed to the grantee the second estate above mentioned. The fact that it fixes the share in the present royalties the same as would have obtained by operation of law does not lessen its force and effect as a conveyance. As is often the case such payment of royalty might have been larger or smaller than a pro rata share. At any rate, the third paragraph conveys the second estate by subjecting the estate granted in the first and fourth paragraphs to the terms of the present lease and limiting the royalty interest to the same proportionate share as such estate bears to all the minerals, that is, 1/16 of 1/8, or 1/128 of 'all of the oil royalty' due or to be paid under the lease. In our judgment the term '1/16th of 1/8th of all of the oil royalty' could reasonably have but one meaning, and that is 1/128 of all the royalty paid under

the lease. Since 'all of the oil royalty' to be paid was the equivalent of 1/8 of all of the oil produced, the interest of respondent in such 1/8 royalty would amount to 1/128 thereof or 1/1024 of all of the oil or other minerals produced under the lease. *Hoffman* v. *Magnolia Petroleum Co.,* Tex. Com. App., 273 S.W. 828; *Jones* v. *Bedford,* Tex. Civ. App., 56 S.W.2d 305, writ refused.'' (See, also, *Citizens' Inv. Co.* v. *Armer,* 179 Ark. 376 [16 S.W.2d 15]; *Rowland* v. *Griffin,* 179 Ark. 421 [16 S.W.2d 457, 460-461]; *Smiley* v. *Thomas,* 220 Ark. 116 [246 S.W.2d 419, 421]; *Segars* v. *Goodwin,* 196 Ark. 221 [117 S.W.2d 43, 44]; *Richards* v. *Shearer,* 145 Kan. 88 [64 P.2d 56, 58]; *Stanley* v. *Slone,* 216 Ky. 114 [287 S.W. 360, 361]; *Koenig* v. *Calcote,* 199 Miss. 435 [25 So.2d 763, 764, 766-767]; *Olvey* v. *Jones* (Tex.Civ.App.), 95 S.W.2d 980, 982; *Clemmens* v. *Kennedy* (Tex.Civ.App.), 68 S.W.2d 321, 323; *Simms* v. *Mitchell* (Tex.Civ.App.), 44 S.W.2d 1056, 1058; *Hoffman* v. *Magnolia Petroleum Co.* (Tex.Civ.App.), 273 S.W. 828, 830; *Collins* v. *Stilger* (Tex.Civ.App.), 253 S.W. 572, 573; *Shinn* v. *Buxton,* 10 Cir., 154 F.2d 629, 633.)

*Hocksprung* v. *Stevenson,* 82 Mont. 222 [266 P. 406], relied on by defendants, was expressly overruled in *Krutzfeld* v. *Stevenson, supra,* 86 Mont. 463 [284 P. 553]. (See, also, *Broderick* v. *Stevenson Consolidated Oil Co.,* 88 Mont. 34 [290 P. 244, 245]; *Johannes* v. *Dwire,* 94 Mont. 590 [23 P.2d 971, 972]; 3 Summers, Oil and Gas, Perm. ed., 507, § 606.)

The grant of 3 per cent of 100 per cent is not a limitation on the percentage of royalties granted. It is a grant of a percentage of the minerals. The last sentence of the granting clause ''spells out'' the grantee's interest in the royalties under the Ohio lease and under all subsequent leases. The two provisions are not inconsistent or irreconcilable, as defendants argue. They have to do with two separate and distinct mineral interests: one an absolute interest in the minerals; the other, in the royalties to be payable under the Ohio lease and under any future lease. We are at a loss to understand how 6/25ths can equal 3/18ths. To sustain defendants' contention would be to disregard the clear and explicit provisions of the grant and to vary its terms by changing its wording from ''6/25ths of all bonuses, rents, royalties and other benefits which may accrue to the lessors under the terms of . . . any other oil and gas lease that may be entered into with respect to said real property from and after the date hereof,'' to 3/18ths of such bonuses, rents, royalties, and other benefits.

If the Vasquezes had intended to convey a 3 per cent landowner's royalty regardless of the amount of royalty payable under any future lease, it would have been a simple matter to have said so as was done in *Barnard* v. *Jamison, supra,* 78 Cal.App.2d 136. We cannot by legerdemain convert 6/25ths into 3/18ths. It was clearly the intention of the grantors to grant 6/25ths of whatever bonuses, rents, royalties, and other benefits should accrue to the grantors under any future lease.

Defendants contend that the acts of the parties may be considered in determining the proper construction of a written instrument, and that the parties, by their acts, have construed the deed as entitling the grantee to receive 3/18ths of the 18 per cent royalty under the lease with the corporation. On February 8, 1951, eight months after the lease with the corporation had been entered into, the attorneys for Vasquez and Alari wrote a letter to plaintiff informing him the lease had been made, the royalty was 18 per cent, and a bonus of $5,000 had been paid. In the letter they said: "[W]hile there would appear to be some possible question as to whether you are entitled to a share in the consideration paid for the lease, corresponding to your three percent mineral interest in the property, we are willing to recommend that you be paid the equivalent of three percent (3/18ths), or $833.33 of the consideration paid for the lease, together with 3/18ths of all royalties on oil, gas, etc., produced from the property." On February 22, 1951, plaintiff in part replied: "This settlement is satisfactory to me and I would appreciate it if you would follow the suggestion in the last paragraph of your letter and advise the lessee to forward to me direct the 3% royalty interest now payable and to become payable." On February 26, 1951, defendants' attorneys sent plaintiff a check for $833.33, with a letter saying it represented 3/18ths of the $5,000 bonus. Shortly thereafter, at the request of defendants' attorneys, the corporation sent plaintiff a check for $1,305.49, representing 3/18ths of the 18 per cent royalty for the months of November and December of 1950 and January of 1951. Plaintiff cashed these checks. On March 20, 1951, the corporation sent plaintiff a check for $310.34, representing 3/18ths of the 18 per cent royalty for February, 1951. Plaintiff did not cash this check.

The deed to plaintiff was executed on May 6, 1940. On execution it was deposited in escrow with one Clary as escrow holder pursuant to the permit of the corporation commissioner.

It has remained in Clary's possession ever since. At the time plaintiff purchased from the Bailies, Paul Younkin, now deceased, acted as his attorney. Mr. Younkin, at that time, obtained a copy of the deed from Clary and read it to plaintiff. The copy, at all times since, has been in Mr. Younkin's files. Plaintiff did not see the deed until about March 23, 1951, when he called on Clary and read it. He forthwith employed his present attorney who immediately wrote to the attorneys for Vasquez and Alari stating that plaintiff had replied to their letter of February 8, 1951, without examining the deed; that plaintiff is entitled to 6/25ths of the bonus and of the 18 per cent royalty; that the checks plaintiff had received were incorrect in amount; that plaintiff rescinded the statements made in his letter of February 22, 1951; that he demanded 6/25th of the bonus and of the royalty; and that he was enclosing plaintiff's check for $833.33 for delivery to Vasquez and Alari. The attorneys for Vasquez and Alari returned the check saying they could not accept it. On March 26, 1951, the attorney for plaintiff also wrote the corporation, enclosing plaintiff's check for $1,305.49, the corporation's check for $310.34, and demanding 6/25th of the 18 per cent royalty. The corporation impounded the $1,305.49 check, destroyed the $310.34 check, and has impounded the funds represented thereby together with 6/25th of 18 per cent of all landowner's royalties accruing subsequent to February, 1951.

The court found: ''That it is not true as alleged in the separate and distinct defense of the answer of defendants Leandro Vasquez and Ruby Alari that the parties by their actions determined their rights under said 'grant deed.' ''

Where the terms of a deed are plain and unambiguous the construction given it by the parties is ordinarily immaterial and, in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary its terms. (*Joerger* v. *Pacific Gas & E. Co.*, 207 Cal. 8, 30-33 [276 P. 1017]; *Hartwig* v. *Central-Gaither Union School Dist.*, 200 Cal. 425, 427 [253 P. 733]; *Marlin* v. *Robinson*, 123 Cal.App. 373, 375 [11 P.2d 70].) Acts of the parties may be considered in construing a written instrument only if the party acting did so with knowledge of its terms. (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].)

Since the deed is clear, definite, certain, and unambiguous, no act of either party may be considered in determining its meaning. However, since the facts were stipulated to, were

before the trial court, and a finding was made with respect thereto, we have considered their effect.

Nearly 11 years had elapsed between the time plaintiff had the deed read to him by Mr. Younkin and February 22, 1951, when he replied to the letter from the attorneys for Vasquez and Alari. The checks for $833.33 and $1,305.49 were cashed prior to March 23, 1951, when he saw the deed for the first time after its execution. When he saw what in reality it said, he immediately consulted an attorney, returned the amounts of the checks he had received, and did not cash the check for $310.34. Further, the letter of February 8, 1951, from the attorneys for Vasquez and Alari to plaintiff, was misleading (no doubt unintentionally) in that it stated the Vasquezes had ''conveyed an undivided three percent of one hundred percent of all oil, etc., to H. C. Bailie,'' without making any reference to the 6/25ths provision of the deed. In view of the fact that plaintiff had not seen the deed for nearly 11 years it was entirely reasonable for him to assume that the statement in the letter was correct and that his interest was 3/18th of the bonus and of the royalties.

Under these circumstances we cannot say that the trial court erred in finding that the parties by their actions did not determine their rights under the deed. Plaintiff's rights under the deed cannot be taken away from him because of acts done in ignorance of those rights.

Affirmed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur in the judgment.

The deed in question evidences a confusion of thought which I think has not been given sufficient attention. For this reason, and the additional reason that I wish to express my disapproval of the manner in which the interest of the grantee was indirectly enlarged I am expressing the following views.

Vasquez and wife had the following interests which were subject to sale and transfer: (1) a share of the so-called mineral rights consisting of underlying oil and gas, (2) a percentage of gross production, and, (3) a percentage of their landowner's royalty. They sold numbers 1 and 2 and conveyed the interests in the following terms: ''Grantors . . . hereby grant to H. C. BAILIE, herein called Grantee, an undivided Three (3%) per cent of 100% of all petroleum, oil,

gas and other hydrocarbons within or underlying, or which may be produced, saved and sold from that certain real property located in the County of Los Angeles, State of California, more particularly described as follows, to-wit:'' The grant of number 1 conveyed 3 per cent of undeveloped oil and gas; number 2 conveyed 3 per cent of gross production of oil and gas. The instrument referred to the existing Ohio lease and made it clear that the 3 per cent would apply to any production or bonus paid under that lease. Under the grant the interest of the grantee would never exceed 3 per cent of gross production, whether under the Ohio lease, or any future lease.

Vasquez and wife did not convey *a percentage of their royalty*. Had they done so the percentage of production going to the grantee would have increased or diminished proportionately as the royalty percentage might be increased or decreased by any new arrangement.

Twelve and one-half per cent, as called for in the Ohio lease, was a minimum royalty. Three per cent of 100 per cent was 6/25 of 12½ per cent. In order to enlarge the interest of the grantee the following was written into the deed: ''This Grant Deed includes, but is not limited to 6/25ths of all bonuses, rents, royalties and other benefits which may accrue to the lessors under the terms of said Oil and Gas Lease or any extension or assignment thereof, or any other oil and gas lease that may be entered into with respect to said real property from and after the date hereof.''

This was correct with respect to the Ohio lease and did not enlarge the interest of the grantee thereunder. But by the addition of the words ''any other oil and gas lease'' the instrument was made to apply to an interest entirely separate from the ones conveyed (1 and 2), namely, a percentage of the landowner's royalty. That there is an inconsistency between the granting clause and the later recital as to what the grant meant is clear. If it had been the intention of the parties that the grant should run to a percentage of landowner's royalty that interest should have been added in the granting cause. As it is, the interest of the grantee has been enlarged from 3 per cent to 4.32 per cent of production by covert and indirect means. I so characterize them for the reason that the writing says, in effect, that the landowners had conveyed something they had not conveyed. In fact, I doubt that the contracting parties understood the import of the added words. Both plaintiffs and defendant evidently

believed that the deed conveyed only 3 per cent of production. Defendant did not realize he could claim more until he had resorted to legal counsel and plaintiffs are not yet convinced.

If there is one type of conveyance which, above others, should be drawn with care it is one which evidences a sale of an oil and gas interest by a landowner to a speculator in oil royalites. Such questionable phraseology as we have here has been the cause of much misunderstanding and litigation, in which the landowner has usually been the loser and the speculator the gainer.

It would have taken but slight evidence to convince me that the questioned provisions of the deed resulted from mistake, but there is no evidence, other than the writing. Those provisions, however erroneous as a definition of the interest conveyed, may not be ignored. I realize that they contain a mere shadow of expression of intention to make them effective as a transfer of the greater interest, but I think they have to be given effect as a matter of contract.

A petition for a rehearing was denied January 21, 1954, and appellants' petition for a hearing by the Supreme Court was denied February 24, 1954. Schauer, J., was of the opinion that the petition should be granted.