## GILL v. BENNETT.
### No. 2808.

Court of Civil Appeals of Texas. El Paso.
April 6, 1933.

Rehearing Denied May 4, 1933.

.Upton & Upton, of San Angelo, for appellant.

Kemp & Nagle, of El Paso, and Brian Montague, of Del Rio, for appellee.

HIGGINS, Justice.

This is a suit by J. R. Bennett against R. H. Gill and others.

The controversy is over an undivided $\frac{7}{1024}$ interest in the minerals in a section of land containing 640 acres. The defendants, other than Gill, are conceded to be the owners of an undivided $\frac{127}{128}$ mineral interest; and, as to those defendants, and that interest, no point is presented by the appeal. The point at issue is whether Bennett owns an undivided $\frac{1}{128}$ ($\frac{8}{1024}$) interest in the minerals, or an undivided $\frac{1}{1024}$ interest. The issue was found in favor of Bennett, and Gill appeals.

The appeal is presented upon an agreed statement of facts.

This agreement discloses the following:

J. D. Jones, the owner of the section, con-veyed to Bennett an undivided $\frac{1}{16}$ interest in and to all of the oil, gas, and other minerals in and under, and that might be produced from, an undivided 80 acres out of said section, together with the right of ingress and egress for the purpose of mining, drilling, and exploring said land for oil, gas, and other minerals and removing the same.

Thereafter, on December 7, 1926, Jones executed an oil and gas lease on said section to Gill on a regular 88 form. The lessee agreed:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which they may connect their wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor one-eighth of net proceeds for the gas from each well where gas only is found, while the same is being used off the premises. * * *

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth of the net proceeds, payable monthly for the time during which such gas shall be used. Should the lessee desire to utilize casing-head gas coming from oil wells upon the premises herein described for the purpose of manufacturing gasoline, lessee shall have the privilege of so doing by paying to the lessor one-eighth of the proceeds derived from the sale of said casing-head gas at the wells."

The lease also provides: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in proportion which their interest bears to the whole and undivided fee."

Gill conveyed to various parties the interest in the oil and gas in the section of land which he acquired by the foregoing lease, and it is agreed that such assignees (who are the other defendants) own $\frac{7}{8}$ of the oil and gas in the section. As to these assignees it was agreed "that they are the owners of seven-eighths of the oil and gas in, on and under said section of land."

On January 13, 1927, Bennett executed and delivered to J. D. Jones an instrument which reads:

"The State of Texas, County of Pecos

"Whereas, heretofore, on April 6th, 1926, J. D. Jones, did execute and deliver to J. R. Bennett, one certain Mineral Deed, wherein and whereby he conveyed to the said J. R. Bennett, a one-sixteenth interest in and to all of the oil and gas and other minerals in and under and that may be produced from certain lands fully described in said mineral deed, which said mineral deed is recorded in Volume 33, page 316, Deed Records of Ward County, Texas, and which said deed

and the record thereof is hereby referred to and for a description of the property conveyed, and for all purposes, and,

"Whereas, it has been agreed between the said J. D. Jones, Grantor, in said deed, and the undersigned J. R. Bennett, Grantee, in said deed; that the said J. D. Jones, had and has the absolute right and authority to lease the lands described in said deed, for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, and had and has the absolute right and authority to execute oil and gas and mineral leases on said land described in said mineral deed above mentioned for such time and on such terms and conditions as to him may seem fit, and that the said J. R. Bennett, nor any one claiming under him has no right or interest in the bonus or rents collected by the said J. D. Jones or his assigns, under any oil and gas or other mineral leases or leases so executed by the said J. D. Jones, now

"Therefore, in consideration of the premises and of One Dollar ($1.00) cash to me in hand paid by J. D. Jones, the receipt of which is hereby acknowledged, and for the purpose of setting out and making plain to the public the intention of the parties in the said mineral deed first herein described, I, J. R. Bennett, the original Grantee in said mineral deed first herein described, do hereby relinquish and disclaim any right, title or interest in or to any bonus or rents collected by the said J. D. Jones, or his assigns, from any oil and gas lease, or other mineral lease, that has heretofore been executed or that may hereafter be executed by the said J. D. Jones on said land described in said mineral deed, and do hereby grant, sell and convey unto the said J. D. Jones, all of the right, title and interest that I may have by virtue of said mineral deed in any and all bonuses and rentals or other monies that may have been collected or may be collected by the said J. D. Jones, on any oil and gas lease or leases, or mineral lease or leases covering said land, or any part thereof, and I hereby absolutely ratify and confirm any and all oil and gas leases or other mineral leases that have heretofore been made, or that may hereafter be made, by the said J. D. Jones covering the land described in the said Mineral Deed, except as to the clause in said lease or leases warranting the title to said land."

On November 7, 1928, J. D. Jones conveyed the section to Eugene Mays. Mays conveyed certain mineral interests in the land, and then conveyed to R. H. Gill the land and all mineral interest in the land then owned by Mays.

The agreement between the parties further provides:

"7th. Appellant, Gill, contends and claims that by the execution of the instrument copied above that appellee, Bennett ratified the oil and gas lease executed by Jones and seven-eighths of his interest should pass to said lessee during the life of said lease; and on the termination of said lease, his full 1/128th interest would revert to Bennett; and that Bennett will only be entitled to one-eighth of 1/128th of all oil and gas produced during the life of said lease, as 7/8ths of his interest would pass to and be owned by the assignees or owners of the oil and gas lease; and that Gill acquired 7/1024 mineral interest in his deed from Eugene Mays, during the life of said lease.

"8th. Appellee, Bennett claims and contends that by the execution of the instrument as copied above he did not part with or waive in favor of the owner of said oil and gas lease any of his interest, and that he is entitled to receive and recover a 1/128th interest of the whole of the oil and gas produced on said land, and claims that said instrument is only a recognition by J. R. Bennett of the oil lease theretofore executed by J. D. Jones and any leases which might subsequently be executed by him, that it was a disclaimer and relinquishment on the part of J. R. Bennett in favor of J. D. Jones to a participation in any rentals or bonuses theretofore received by J. D. Jones or thereafter to accrue by virtue of any lease to be executed to J. D. Jones. He claims that by virtue of said instrument that Bennett was the non-participating royalty owner to the extent of 1/128th interest in the minerals produced.

"9th. It is hereby agreed that if the instrument copied above has the effect of ratifying said oil and gas lease executed by Jones, and that 7/8th of the interest owned by Bennett would pass to the owner of the lease, and he would be entitled to 1/8th of his interest as royalty, then in that event this cause should be reversed and rendered in favor of R. H. Gill, so that he, R. H. Gill will have an undivided 7/1024 interest during the life of said oil and gas lease, and that Bennett will have only 1/1024 interest during the life of said oil and gas lease. Otherwise, should it be determined that the instrument above copied does not pass to the owner or owners of said oil and gas lease 7/8th of the interest originally owned by the said J. R. Bennett; during the life of said lease, then in that event, said cause should be affirmed."

## Opinion.

Both sides concede that the controlling question in the case is the proper interpretation to be placed upon the instrument executed by Bennett on January 13, 1927.

On December 7, 1926, Jones and Bennett were tenants in common of the oil, gas, and other minerals in the section of land, Jones

owning an undivided $127/128$ interest therein, and Bennett owned the other $1/128$ interest.

█ On that date Jones executed the oil and gas lease whereby he undertook to grant and lease the section to Gill for the purpose of mining and operating for oil and gas. Jones was without authority to grant and lease the mineral interest of Bennett, but it was of course competent for the latter to ratify the unauthorized act. 38 Cyc. 106 and 111; 1 Tiffany on Real Property, 682; 7 R. C. L. 877, 879, and 882; Werner v. Mayfield Co. (Tex. Civ. App.) 248 S. W. 766; Texas & Pacific C. & O. Co. v. Kirtley (Tex. Civ. App.) 288 S. W. 619; Van Deventer v. Gulf P. Co. (Tex. Civ. App.) 41 S.W.(2d) 1029. If Bennett did ratify the oil and gas lease, it operated as effectively as if he had originally joined in the same and passed to Gill $7/8$ of the oil and gas in the section subject to the terms and conditions of the lease.

If there was such ratification, then Bennett is a participating royalty owner and entitled to $1/128$ of the oil and gas royalty agreed to be paid by the lessee.

On the other hand, if there was no such ratification, then Bennett is nonparticipating in the royalty, but is entitled to $1/128$ interest in all of the oil and gas produced from the whole section.

██ In construing the instrument in question, the intention of the parties is of primary and controlling importance. The instrument is unambiguous. Such being its nature, the intention of the parties must be determined from the instrument itself considered as a whole. Reynolds v. McMan Oil & Gas Co. (Tex. Com. App.) 11 S.W.(2d) 778.

Counsel for appellee assert it was plainly not the purpose of the instrument to evidence an election on Bennett's part to abide by the lease theretofore executed in favor of Gill, but it was merely a recognition of a right on the part of Jones to do what he did in connection with the lease and deal with the entire mineral interest, appropriating to Jones' own use all moneys received as rentals and bonuses without accounting therefor to Bennett and reserving to Bennett his $1/128$ interest in all of the oil produced from the section.

█ But, in our opinion, the instrument clearly evidences the intention of Bennett to abide by the lease theretofore executed by Jones, and there is nothing to indicate that Bennett intended to reserve to himself his full $1/128$ interest in the oil and gas produced from the land.

To so hold would be to wholly disregard the concluding portion of the instrument, which reads: "And I hereby absolutely ratify and confirm any and all oil and gas leases or other mineral leases that have heretofore been made, or that may hereafter be made, by the said J. D. Jones covering the land described in the said mineral deed, except as to the clause in said lease or leases warranting the title to said land."

This express ratification of all previous leases is in complete harmony with the previous recitals in the instrument that Jones had the absolute right and authority to lease the land for the purpose of mining, drilling, and exploring for oil and gas and to execute oil and gas leases on the land for such time and on such terms as he saw fit.

The instrument of January 13, 1927, clearly constitutes a ratification by Bennett of the previous lease executed by Jones in favor of Gill. Upon this view it follows that title to $7/8$ of the oil and gas in the section passed to Gill by the lease of December 7, 1926, upon the terms and conditions stated in the lease, and the judgment should be reversed and here rendered in favor of Gill as stated in the ninth section of the agreement quoted above. It is so ordered.

Reversed and rendered.