[L. A. No. 20462. In Bank. Apr. 28, 1950.]

R. C. LITTLE et al., Appellants, v. MOUNTAIN VIEW DAIRIES, INC. (a Corporation), Respondent.

Dolley, Knight, Woods & Hightower and Arthur B. Knight for Appellants.

Richard A. Grant, Warren S. Pallette, Paul A. Lower, S. E. Cavanaugh, L. R. Seaman, Rush M. Blodget, Alfred W. Mitchem and Gordon A. Goodwin as Amici Curiae on behalf of Appellants.

Joseph A. Ball and E. P. Mulholland for Respondent.

TRAYNOR, J.—In 1935 plaintiffs' predecessors in interest in certain real property granted to defendant a limited interest in that property described as "Eight and one-third per cent (8-1/3%) of all oil, gas and other hydrocarbon substances, and minerals, in, under and/or which may be hereafter produced and saved from" the property. In 1945 plaintiffs leased the property to Loren L. Hillman, Inc., for the purpose of producing oil and gas. The lease reserved to plaintiffs as lessors a royalty of one-sixth of all oil produced and saved from the premises. The lease also provided in part as follows:

"10. In case said Lessor owns a less interest in the above described lands than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said Lessor only in the proportion which his interest bears to the whole undivided fee.

"10-a. Lessor agrees that in no event shall Lessee be required to pay greater rents or royalties than provided in this lease and Lessor further agrees that Lessor will fully satisfy and discharge any and all of the obligations and requirements under [the deed to defendant] insofar as the above described land and the production therefrom is concerned. And Lessor further agrees to protect Lessee against any expense, loss or damage arising as a result of claims or rights asserted by others in or under said deed above referred to."

Defendant did not sign the lease but executed a separate

234

document attached thereto, which reads as follows: "The within Oil and Gas Lease is hereby ratified, approved and confirmed."

The present controversy is over the proportions in which plaintiffs and defendant shall share the one-sixth (16⅔%) royalty payable by the lessee under the lease. Plaintiffs by their complaint for declaratory relief claimed that they were entitled to eleven-twelfths of the royalty. Defendant answered and cross-complained, claiming one-twelfth of all the oil produced or 50 per cent of the royalty. Each party moved for judgment on the pleadings, and the court decided in favor of defendant and entered its judgment accordingly. Plaintiffs have appealed from the minute order granting defendant's motion and denying theirs, and from the judgment. ▮ It is settled that an order granting a motion for judgment on the pleadings is not final or appealable, and that it is only from the subsequently entered judgment that an appeal will lie. (*Holton* v. *Noble,* 83 Cal. 7, 9 [23 P. 58] ; *Montgomery Ward & Co.* v. *Welch,* 17 Cal.App.2d 127, 129 [61 P.2d 790] ; *Overton* v. *White,* 18 Cal.App.2d 567, 568-569 [64 P.2d 758, 65 P.2d 99] ; Code Civ. Proc., § 963.) Accordingly, the appeal from the order must be dismissed.

Before the oil and gas lease was executed, plaintiffs and defendant were tenants in common in the exclusive right to drill for and produce oil from the land. (See *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 649 [52 P.2d 237].) Their respective interests were defined by the grant deed from plaintiffs' predecessors in interest to defendant. If, as plaintiffs contend, the deed conveyed no more than a one-twelfth interest in the grantors' mineral rights, their interests were in the ratio of eleven to one.

▮ It is settled that if one cotenant produces oil, he is entitled to charge the interests of nonproducing cotenants for their proportionate share of drilling and operating expenses. (*Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 657 [52 P.2d 237] ; see, also, *McCord* v. *Oakland Q. M. Co.,* 64 Cal. 134, 148-149 [27 P. 863, 49 Am.Rep. 686] ; anno., 5 A.L.R.2d 1368, 1380.) ▮ In this case the expense incurred by the owners of the mineral rights in producing the oil from the land is represented by the five-sixths of the oil that the lessee retains from the total production. By ratifying the lease defendant agreed that this is a fair charge for the expense of bringing the oil to the surface. (*Gill* v. *Bennett,* (Tex.Civ.App.) 59 S.W.2d 473, 475; *Texas & Pacific Coal & Oil Co.* v. *Kirtley,*

(Tex.Civ.App.) 288 S.W. 619, 622.) "If a lease be executed by a cotenant, the nonconsenting cotenants may recognize the lease and receive their fractional interest in the royalty, or they may reject the lease, and receive their fractional part of the oil produced, less their proportionate part of the cost of discovery and production." (*Davis* v. *Atlantic Oil Producing Co.*, 87 F.2d 75, 77.)

Section 10 of the lease provides for the payment to plaintiffs of that proportion of rentals and royalties that their interest bears to the whole undivided fee in the real property.

Section 10-a of the lease does not increase the share of the royalties to which defendant would otherwise be entitled. That section merely binds plaintiffs to "satisfy and discharge any and all obligations and requirements under" the deed to defendant. It does not purport to state what those obligations are. Accordingly, it is necessary to determine whether the deed conveyed only one-twelfth of the mineral rights, or on the contrary, as defendant contends, it conveyed an expense-free or royalty interest that would entitle defendant to one-twelfth of the oil produced free of any cost of production.

Defendant contends that the addition of the words "and which may hereafter be produced and saved" to a grant of a fraction of all the oil in and under the land clearly evidence an intent that the interest granted should be expense free. It has been generally held, however, that a grant of a fraction of all "'of the oil, gas and other minerals in and under, *and that may be produced*" from the land creates an expense-bearing mineral fee interest rather than an expense-free royalty interest. (*Richardson* v. *Hart*, 143 Tex. 392 [185 S.W.2d 563, 564-565]; *Watkins* v. *Slaughter*, 144 Tex. 179 [189 S.W.2d 699, 700]; *Jones* v. *Bedford*, (Tex.Civ.App.) 56 S.W. 2d 305; *Gill* v. *Bennett*, (Tex.Civ.App.) 59 S.W.2d 473, 475; *Hinkle* v. *Gauntt*, —— Okla. —— [206 P.2d 1001, 1005]; *Manley* v. *Boling*, 186 Okla. 59 [96 P.2d 30, 31-32]; *Shinn* v. *Buxton*, 154 F.2d 629, 631-635; see, also, *Brooks* v. *Mull*, 147 Kan. 740 [78 P.2d 879, 883].) When there is an existing oil lease at the time the lessor executes a mineral deed, it is not uncommon for the deed to grant not only a given fraction of all the oil in, under, and that may be produced from the land, but also the same fractional interest in the royalties payable under the lease. (See 3 Summers, Oil and Gas [Perm. ed.], § 606, p. 502.) If the first clause of such a deed were construed as creating an expense-free royalty interest, it would grant the stated fraction of the total production rather than

the stated fraction of the landowner's royalty reserved under the lease, and would therefore be inconsistent with the second clause. It has been held, however, that such deeds are not internally inconsistent and that the grant of the stated fraction of the royalties under the existing lease is merely a statement of the legal effect of granting the same fraction of all the oil in, under and that may be produced from the land. (*Shinn* v. *Buxton,* 154 F.2d 629, 631-635; *Richardson* v. *Hart,* 143 Tex. 392 [185 S.W.2d 563, 564-565].)

It is contended that because of differences in the applicable theories of oil and gas rights, authorities from other jurisdictions are of no value in interpreting the language of a grant of mineral rights in California land. There is nothing, however, in the theory of oil and gas rights in California to cause this court to reject the interpretation that has been adopted by the courts of other states in construing language similar to that in the deed in this case. California has rejected the theory of ownership of oil and gas in place (*Callahan* v. *Martin,* 3 Cal.2d 110, 118 [43 P.2d 788, 101 A.L.R. 871]), and language in a grant referring to oil to be produced would therefore have less significance in determining the expense-free or expense-bearing nature of the interest created than similar language in a deed dealing with land in a state, such as Texas, where the theory of title to oil and gas in place has been retained. (*Richardson* v. *Hart,* 143 Tex. 392 [185 S.W.2d 563, 564].) In California the parties might well doubt the effectiveness of a conveyance limited to a fraction of all the oil and gas in and under the land and therefore add a reference to oil to be produced, without in any way intending to convey more than the stated fraction of all the oil rights appurtenant to the land. (See *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 648-649 [52 P.2d 237].)

Furthermore, the decision in *Dabney-Johnston Oil Corp* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237], indicates that the addition of the words ''which may be hereafter produced and saved'' after a grant of a fraction of all of the oil in and under the land does not have the effect of creating an expense-free interest. In that case there was a grant of ''a two per cent in said land owners royalty of all gas, oil and other hydrocarbon substances to be produced and saved and sold from said described land. . . .'' The interest was described as a royalty interest, and in holding it expense-free, the court reasoned that since the 2 per cent interest had been carved from the land owner's 27½ per cent expense-free royalty

under an existing lease, it would necessarily be implied that after the termination of the lease, the 2 per cent interest remained expense-free. It placed no reliance on the words ''to be produced and saved and sold from said described land,'' pointing out that the quoted language was inserted for another purpose than to indicate how the expenses were to be allocated. It was contended that under the deed the grantee was entitled to royalties only if a lessee was producing oil, not if another cotenant was producing it. In answering this contention the court said, ''That the parties in the instant case did not contemplate that a single producing tenant should retain the entire output is indicated by the stipulation of facts and the reforming clause added to the assignment, which expressly provide that the rights of the assignees extend not only to oil within and beneath the land, but to all oil and other hydrocarbon substances produced and saved from the land, however said substances should be produced.'' (4 Cal.2d at 657.) It is clear, therefore, that in California as in other jurisdictions, in the absence of extrinsic evidence or other controlling language in the deed, a grant of a fraction of all the oil in, under and that may be produced and saved from the land creates an expense-bearing mineral fee interest.

*Barnard* v. *Jamison*, 78 Cal.App.2d 136 [177 P.2d 341], does not support a contrary result. In that case the grant deed contained a clause that specifically provided what expenses the fractional interests conveyed should bear, and the court properly held that this clause was determinative of the issue.

The appeal from the order granting the motion for judgment on the pleadings is dismissed. The judgment is reversed.

Shenk, J., Edmonds, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—In December, 1935, the then owners of the involved land executed and delivered to defendant an instrument entitled ''Grant Deed,'' in which it is declared that such owners ''do hereby grant to [defendant] . . . Eight and one-third per cent (8⅓%) of all oil, gas and other hydrocarbon substances, and minerals, in, under/or which may be hereafter produced and saved from'' such land. In August, 1936, the land was conveyed to plaintiffs, with the express exception of the percentage interest in the oil, gas and other minerals which had theretofore been transferred to defendant. By reason of the earlier conveyance and the express

exception it is obvious that plaintiffs never acquired more than 91⅔ per cent of the oil and mineral rights. In February, 1945, plaintiffs, as lessors, entered into an oil lease covering the property. The lease provides for a ⅙ (16⅔%) land-owner's royalty payable to plaintiffs and expressly requires of plaintiffs that (Par. 10-a) "in no event shall Lessee be required to pay greater rents or royalties than provided in this lease and Lessor [plaintiffs] further agrees that Lessor will fully satisfy and discharge any and all of the obligations and requirements under that certain Deed [to defendant, of its percentage interest in the oil, gas and other minerals] . . . insofar as the above described land and the production there-from is concerned." Defendant did not sign the lease as a lessor and is not named as such. Its character or relationship, as being distinct from that of cotenant lessor, is indicated by the provision above quoted and by the fact that under date of March 1, 1945, it executed a writing attached to the lease which reads: "The within Oil and Gas Lease is hereby rati-fied, approved and confirmed." Obviously, the defendant, by the terms of the lease, by the substance of its endorsement thereon, and by the language of the original conveyance to it, is not a mere cotenant lessor. It is the owner of what hereto-fore in California has been termed a royalty interest—of 8⅓ per cent of "all" oil and gas which may be "produced and saved" from the land. The lessee has "produced and saved" oil and gas from the demised premises and the sole question is: Is defendant entitled to 8⅓ per cent of *all* the "produced and saved" oil and gas or only to 8⅓ per cent of that share of the oil and gas (⅙) which plaintiffs as lessors reserved in their lease agreement with the producers?

The trial court accepted the language of the conveyance to defendant and adjudged that the defendant owns 8⅓ per cent of *all* "oil, gas and other hydrocarbon substances and minerals in, under and/or which have heretofore or may here-after be produced and saved" from the land; that defendant is entitled to receive that percentage of the total production; and that plaintiffs "shall account to and pay over to the de-fendant . . . the proceeds from the sale of 8⅓% of 100% of" the total production. Plaintiffs urge, however, and the ma-jority now hold, that defendant is entitled not to 8⅓ per cent of *all* the oil and gas "produced and saved" from the premises, but only to 8⅓ per cent of *one-sixth* of the oil and gas so produced and saved. This startling result is accom-plished by holding that the conveyance to defendant did not

give it a royalty interest in the oil but that it is a tenant in common of land or mineral rights in fee with plaintiffs and is entitled merely to a share of their lessors' royalty.

In support of the majority position it is argued that the language of the conveyance to defendant creates a fee interest in minerals, rather than a royalty interest; that, therefore, under the holdings of certain cases from other states, construing various contracts and conveyances, defendant should be held entitled to no more than $8\frac{1}{3}$ per cent of the plaintiffs' $\frac{1}{6}$ lease royalty; and, further, that as a cotenant holder of a "fee interest" in the oil and gas rights to the land, as well as by reason of defendant's ratification of the lease, defendant should pay its "proportion of drilling and operation expenses" (see *Dabney-Johnston Oil Corp.* v. *Walden* (1935), 4 Cal.2d 637, 657 [52 P.2d 237]) and should share in royalties under the lease on the property in the same proportion that its "fee interest bears to the total fee interest." I am satisfied that upon the law as heretofore established in California such position is untenable. This court has definitely rejected the theory that the transfer of fractional oil rights in land constitutes a transfer of a fee interest in the oil, and has held that in this state the transferee of such rights receives a royalty interest; i. e., an interest in real property in the nature of an incorporeal hereditament, which he holds as a cotenant with the other owners of oil rights in the same land. (See *Callahan* v. *Martin* (1935), 3 Cal.2d 110, 125, 126 [43 P.2d 788, 101 A.L.R. 871]; *Dabney-Johnston Oil Corp.* v. *Walden* (1935), *supra*, 4 Cal.2d 637, 649, 650, 654; *Schiffman* v. *Richfield Oil Co.* (1937), 8 Cal.2d 211, 223-224 [64 P.2d 1081]; *La Laguna Ranch Co.* v. *Dodge* (1941), 18 Cal.2d 132, 135 [114 P.2d 351, 135 A.L.R. 546]; *Tanner* v. *Title Ins. & Trust Co.* (1942), 20 Cal.2d 814, 819-820 [129 P.2d 383]; *Tanner* v. *Olds* (1946), 29 Cal.2d 110, 116 [173 P.2d 6, 167 A.L.R. 1219].)

Plaintiffs concede that if the parties to a conveyance "intended the conveyance to be of a royalty interest, it is generally held that the grantee takes what may be termed a nonexpense bearing interest, or a net interest in the royalty reserved in any lease on the land." As pointed out in the Dabney-Johnston case, at page 653, the "language of a grant is to be construed most strongly against the grantor" (see, also, Civ. Code, § 1069; *Beam* v. *Duggan* (1933), 132 Cal.App. 546, 550 [23 P.2d 58]) and (p. 657), "where cotenancy interests have been sold with the understanding and agreement that

they shall not be subject to such charge [for a proportion of drilling and operation expense], but that other units shall bear the full expense of production . . . such agreement of the parties, express or necessarily implied [is controlling]."
Here the grant to defendant unequivocally specifies that defendant is to receive 8⅓ per cent of "all oil, gas . . . which may be hereafter produced and saved from" the land involved, and no mention or provision is made of a requirement that defendant pay, or be charged with, a share of the cost of production, or any other debit against his interest, under a lease for oil development which might subsequently be executed by the grantor or his successors in title. It would seem that, as commented by the court in *Barnard* v. *Jamison* (1947), 78 Cal.App.2d 136, 141 [177 P.2d 341], "the words of conveyance . . . could not be plainer."

Moreover, it does not appear that by "ratifying, approving and confirming" the lease, defendant agreed to be charged with any part of the lessee's share in the production. By paragraph 10-a of the lease, quoted in material part hereinabove, plaintiffs expressly agreed to fully satisfy and discharge the obligation to pay over to defendant the latter's royalty share in the oil and gas produced. Consequently, it seems only reasonable to conclude that, as impliedly found by the trial court, defendant's ratification of the lease constituted no more than a consent that the lessee named therein should proceed with oil development upon the condition, explicitly set forth in the lease, that defendant's rights be fully satisfied and discharged. Defendant's royalty interest comes not from the lease but was created and is measured by the original landowner's conveyance.

Plaintiffs rely upon cases from other states[1] in which it was held that the landowner's royalty to be paid under an oil and gas lease should be divided between cotenants in proportion to their interests in the land or the minerals. However, those cases differ from ours in language of the conveyances involved, in circumstances under which the leases were made, and in the accepted legal theories of oil and gas rights which were applied, and consequently they are of doubtful assistance here.

Plaintiffs argue that judgment on the pleadings was im-

---

[1]See *Manley* v. *Boling* (1939), 186 Okla. 59 [96 P.2d 30, 31-32]; *Swearingen* v. *Oldham* (1945), 195 Okla. 532 [159 P.2d 247, 250]; *Murphy* v. *Dilworth* (1941), 137 Tex. 32 [151 S.W.2d 1004, 1006]; *Richardson* v. *Hart* (1945), 143 Tex. 392 [185 S.W.2d 563, 564-565]; *Shinn* v. *Buxton* (1946, 10 C.C.A.), 154 F.2d 629, 632-633.

proper because "the complaint for declaratory relief in this instance clearly stated a cause of action" (see *Seeger* v. *Odell* (1941), 18 Cal.2d 409, 412 [115 P.2d 977, 136 A.L.R. 1291]; *Rannard* v. *Lockheed Aircraft Corp.* (1945), 26 Cal.2d 149, 151 [157 P.2d 1]; *Columbia Pictures Corp.* v. *De Toth* (1945), 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747]), and plaintiffs "have not had an opportunity to prove the allegations in their complaint. They should not be denied their day in court unless the deed to Mountain View Dairies, Inc. so clearly constitutes an assignment of landowner's royalty that no other construction upon such deed is possible." It is to be noted, however, that the deed to defendant, as well as the oil lease here involved, were relied on by both parties and were pleaded in full by defendant in its cross-complaint. In their opening brief plaintiffs assert that "The primary question for determination . . . is whether, under the pleadings, the deed and the lease here involved, Mountain View Dairies, Inc., is entitled to $8\frac{1}{3}\%$ or $50\%$ of the landowner's royalty . . ." In their notice of motion for judgment on the pleadings plaintiffs solemnly declare that "Said motion will be made as to said cross-complaint upon the ground that no material issue of fact is presented by the cross-complaint and answer thereto but on the contrary that *the only issue presented is one at law, to-wit, the legal interpretations of the*" deed and the lease. (Italics added.) The declaratory judgment sought by each of the parties hereto involved the interpretation of the same instruments upon the same pleadings, and was rendered by the court. Under such circumstances plaintiffs are not entitled, when the judgment went against them, to now assert that interpretation of either the deed or the lease presents a question of fact, rather than of law, and that the judgment should not have been rendered on the pleadings alone.

For the reasons above stated, I would affirm the judgment appealed from.

Carter, J., concurred.